## WALSH v. W. P. REND COLLIERIES CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2193.

EVIDENCE ☞513—DANGEROUS CONDITION OF MINE—EXPERT TESTIMONY.

In an action for the death of a car driver in a coal mine, who was killed by coal and slate which fell from the roof of the entry, plaintiff was entitled to the testimony of a duly qualified expert in answer to hypothetical questions based on the evidence, giving his opinion as to the safety of the entry and as to whether the means used to support the roof at the place of the injury were proper, or were inadequate and unsafe.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. ☞513.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Francis M. Wright, Judge.

Action at law by J. H. Walsh, administrator of the estate of Lorenzo Nanni, alias Nanna, deceased, against the W. P. Rend Collieries Company. Judgment for defendant, and plaintiff brings error. Reversed.

Decedent of plaintiff in error, termed plaintiff hereinafter, was killed by falling slate and coal in the mine of defendant in error, hereinafter called defendant, in the latter's coal mine at Rend City, Franklin county, state of Illinois, on July 17, 1911. From the record it appears that he was employed by defendant as a mule driver, whose duty it was to deliver empty cars at the entrance to the various rooms along the entries where miners were digging coal, and to haul the loaded cars along the entry to the "parting" or shaft bottom. He would drive his mule with the empty car along the entry to the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

switch, then detach the mule and turn him into an adjoining room. The car would then descend by gravity to the desired point. The driver would then hitch onto a loaded car in the room adjoining the switch and pull it to the so-called "parting" or shaft bottom. While engaged in this routine, the accident occurred.

The declaration contains three counts. The first count charges violation of the Illinois mining statute of 1911 by defendant in willfully failing to have the mine examiner to observe and make a record of the fact that the roof and walls of the roadway in the mine were in a dangerous condition, and in not taking the statutory steps for keeping the men from entering the mine while unsafe. Count 2 charges a further violation of the same statute by willfully permitting decedent to enter and pass through said dangerous roadway, when defendant knew the roof was insufficiently supported, and there to remain not under the direction of the mine manager, whereby decedent was killed. Count 3 is the common-law count for failure to furnish a safe place for decedent to work in, after notice and promise to repair, etc. The jury found the defendant not guilty.

Plaintiff sued out the present writ of error, and alleges as grounds for such writ certain rulings of the trial court as to the admissibility of the testimony of one Taylor as an expert touching the condition of the mine, which will be stated in the opinion, the introduction in evidence of certain state certificates of the mine manager and examiner, in excluding the mine examiner's report when a part thereof had been admitted in evidence, and the denial of plaintiff's motion to strike out the testimony of one Steve Gosnell.

Charles B. Elder, of Chicago, Ill., for plaintiff in error.

Moses Pulverman, of Benton, Ill., for defendant in error.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). Under the condition of the record, the only material matter before us is as to the error of the court in admitting and rejecting certain evidence. Plaintiff introduced one James Taylor as an expert and proceeded to put questions to him as such. This witness was the son of a miner. He had commenced mining at 8 years of age; had served as tripper, driver, mine manager, superintendent, and state mine inspector, which latter position he had filled for about 23 years. Evidently his experience was such as to qualify him to testify as an expert in cases such as this. He was not personally familiar with conditions existing in the mine in question at the time of the accident. He was asked three hypothetical questions, all of the facts of which we find to be reproduced in substance from the evidence adduced in the case.

First. After reciting the condition of the mine at the time of the accident, he was asked:

"Have you an opinion as to whether or not that condition is safe?"

To this defendant interposed a general objection, which the court sustained, with the remark:

"I was going to submit that question to the jury; that is for the jury. They know as much about it as he does, and probably more, because they have been hearing the evidence."

Second. After again detailing, in substance, the condition of the mine at the time of the accident, the witness Taylor was asked:

"Do you know what is the proper way to support the roof?"

Again defendant's counsel interposed a general objection, which the court sustained, with the statement:

"This roof did fall. There is no question about that. * * * That demonstrated that it was not safe. * * * Now, that is. not the issue here. The issue is whether by reasonable examination, such an examination as people in that sort of industry would make through a mine inspector, or licensed mine inspector, would have discovered that dangerous condition. Of course, the mine is not an insurer. * * * Either keep the men out or make it safe. That is the command of the law when its condition is known, or it could have been known by the exercise of reasonable care, as the statute requires."

Counsel then stated that he wanted to show by the witness that the mine could have been—

"made safe by what is known as a switch frame—to have him describe what a switch frame is. That is the substance."

Third. Witness was asked whether, in view of the conditions already described,

"if a fall of stone occurred, so that a large stone fell north of this switch in the entry I have described, that the stone fell upon a car standing north of the switch, that there were two props or more placed east of the track and north of the switch, one from four to six feet north of the switch in the roadway, and the other several feet north of that, that one of these props, the northernmost, or, if there were three, then two of the props, the northernmost, were fallen over, or at any rate leaned against the rib on the east, and that other rock had broken off from the rock which had fallen on the car, the rock on the car being a large rock which might weigh 800 or 900 pounds, have you an opinion as to what might have caused this fall?"

This question was objected to and the objection overruled. The witness answered:

"Yes, sir."

By plaintiff: "What is that opinion?"

Objected to by defendant's counsel as theoretical. Thereupon the court sustained the objection. To all of the foregoing rulings of the court, excluding said testimony, plaintiff saved exceptions. What it was expected the witness would have sworn to, had he been permitted to testify, was as follows, viz.:

First, that the conditions described in the hypothetical question submitted to him and the conditions described in the plaintiff's testimony at the first northwest entry in the neighborhood of room 25 were unsafe in his opinion.

Second, that the fall described in the hypothetical question submitted to him might have been caused by contact with one of the props in the east side of said roadway or one of the legs supporting the cross-bars by a mule or a person, and even by a very slight collision sufficient to jar the support, or that it might be caused by a change in position in the loose stone or top coal described in said hypothetical question, and without any contact with the props or legs by any person or animal, or that it might have been caused by the mere weight of the overhanging stone over said cross-bar described in the hypothetical question, or that it might have been caused by any other number of causes; further, that the witness has in his observation seen falls caused by such causes stated. And the plaintiff further expected to prove by said witness that the fall described in the testimony of the plaintiff might have been caused by any one of a number of causes similar to those heretofore described herein in this statement.

Third, that plaintiff expected said Taylor to testify that said condition described in the hypothetical question submitted to him could have been made safe so far as the danger of the fall from the large stone was concerned by

removing said large stone; and also that said condition could have been made safe by building a switch frame consisting of a bar extending across the roof at the room neck supported by one leg at either side of said room neck at the north and south with other bars extending westerly from said bar across said room neck across the entryway by upright legs of timber. That plaintiff further expected said Taylor to testify that such method of constructing switch frames was a common method of making entries safe at the points at which rooms open therein, frequently used in mines throughout the state of Illinois. That plaintiff further expected said Taylor to testify that to merely support portions of the roof by props between the track and the rib was a dangerous method. That said method was dangerous for a number of reasons, among which was the danger of collision with said props by persons or animals, who might be in said roadway, and by reason of the fact that the support was not as thorough as crossbars supported by uprights or such an arrangement as a switchframe.

On the other hand, defendant's expert Gosnell was permitted to testify that "the place was safe" on the morning of the accident. When plaintiff asked that such statement "be stricken out, unless the grounds for the statement be put in evidence," the court said:

"Well, now, this man is a licensed examiner, * * * and I suppose he has been subjected to examination to sustain his qualifications. That being true, he has a right to express his opinion. That is not conclusive on the jury at all. It is simply for their consideration. They may give it whatever weight they may think it entitled to, in view of all the other evidence in the case. * * * The motion is overruled."

To which ruling an exception was saved.

This holding we understand to be the law in such cases, subject, however, to the right of plaintiff to cross-examine; but we know of no principle of evidence which would justify the ruling of the court upon the same question in the case of the witness Taylor. We are not prepared to say from the evidence that the matters propounded to Taylor are as well understood by the jury as by an expert. We are not sufficiently advised in mining matters by the evidence to say that the supporting of the roof by props, as is shown in the evidence to be the case here, which defendant claims could be knocked down by a blow or push from the singletree used in moving the coal car, was a proper construction. Nor do we think that fact was so patent that the jurymen were justified in assuming it. Coal mining is a special calling, and its requirements are not so obvious to one not versed in regard to them as to warrant the exclusion of expert evidence to elucidate them. As was said by this court in Brazil Block Coal Co. v. Hotel, 192 Fed. 108, 112 C. C. A. 448, with reference to a charge of failure to supply props as required by the statute:

"On this issue it was plaintiff's right, not only to depict before the jury the room's physical condition, from which the jury might judge of the possibility and propriety of using timbers to support the dangerous rock in the roof, but also to offer the testimony of himself and others, as experts, that the use of timbers was the proper method under the circumstances as they existed."

It was just as competent for Taylor to be allowed to say that he considered the conditions existing in the mine as unsafe as it was to allow Gosnell to say that in his judgment they were safe. The fact that the one would be responding to a hypothetical question, while the

other testified from knowledge of the circumstances, would be a matter for the jury to weigh. The witness Taylor should have been allowed to answer the question propounded to him as an expert. Under the common-law count they were material and proper, and their exclusion was error. It is unnecessary to consider their bearing upon the statutory counts. We think the mine examiner's report should have been admitted in evidence. There was no error in admitting the state certificates of the examiner and mine manager.

For the reason stated, the cause is reversed, with direction to grant a new trial.