## EKBLOM v. G. O. REED, Inc.*
### No. 7272.

Circuit Court of Appeals, Fifth Circuit.
June 15, 1934.

R. A. Hendricks and Ross Williams, both of Miami, Fla., for appellant.

E. B. Kurtz and William L. Reed, both of Miami, Fla., for appellee.

Before BRYAN, FOSTER, and SIB-LEY, Circuit Judges.

SIBLEY, Circuit Judge.

Mrs. Ekblom sued G. O. Reed, Inc., for the negligent killing of her husband. Having ruled out some evidence, the court directed a verdict for the defendant, and she appeals. The declaration framed in many counts alleged that the deceased was one of four men put to load a heavy boiler on a truck; that without his fault the boiler rolled and crushed his head against a brick wall. The negligences claimed which are necessary to be here noticed are that a safe place to work was not furnished; that the work was dangerous and the deceased inexperienced, and a competent superintendent of it was necessary but he was not present; that the appliances were insufficient, in that the truck was not properly braced and chocked and the timbers furnished to chock the boiler were not large enough to keep it from rolling. There was a plea of general issue, and one of contributory negligence, in

*Rehearing denied July 23, 1934.

that the deceased was working in front of a window in the wall and would not have been hurt if he had lowered his head as he should have done below the top of the window when the boiler rolled. There was no proof about the window, so the direction of the verdict cannot rest on the latter plea. The evidence is that the deceased and three fellow laborers in charge of G. O. Reed, the president of the defendant company, were put by Reed to work in getting a cylindrical boiler, which was from four to five feet in diameter and from ten to twelve feet long and weighed about three tons, out of a pit and onto a truck, the bed of which was six by twelve feet. Reed stayed at the job and directed it until the boiler was out of the pit and ready to be loaded on the truck, when he left and did not return. According to some witnesses, the boiler was in a narrow alley with a brick wall on each side about eighteen inches from the edges of the truck. Others say only one wall was so close. The ground was sea sand, but planks were laid for the truck wheels to stand on. An outsider who had twenty-five years' experience in such work, and who was observing it, told Reed he ought to roll the boiler out in the open before attempting to load it, but Reed refused. This witness thought the men all seemed inexperienced. After Reed left, the truck was backed up by the men to the boiler. Some say the wheels were chocked; some say not. There is testimony that the two rear corners of the bed were supported from the ground by jacks. Others say there ought to have been but was not any blocking of the springs and the front of the truck to keep it from giving way. The boiler was drawn up by rollers on skids endwise over the rear of the truck, a piece of timber four inches square being held against it on each side to keep it from rolling. As the boiler got on the truck bed and was two or three feet from where it was to rest, it rolled toward the side on which Ekblom was holding the chock, catching him between it and the wall behind him and crushing his skull. The truck then stood "tipped over to one side, the boiler against the building." No one seemed to know just what caused the boiler to roll. There was no testimony to show whether it rolled over Ekblom's chock or pushed it aside, whether the truck moved or the jacks, if any, under it gave way, or the sand caved. This uncertainty was thought to require the directed verdict. We think not. Necessarily the truck bed became tilted from some cause to make the boiler roll at all after it was on the truck. Experienced witnesses testified that if the bed should tilt from three to five inches

a boiler of that size would roll over a four by four inch chock, and they thought chocks of that size too small for safety. They say that the truck bed should have been blocked up at all four corners for security, and some thought that the boiler ought to have been put into a "cradle" for loading instead of relying on chocks. There was evidence, too, that it was unsafe to attempt such a job crammed against walls and in sand, and that an experienced person to conduct the work and give orders was necessary in that sort of job. The jury might well have concluded that the work was dangerous and not carefully organized, that a reasonably safe place to do it was not furnished by the master, and that it was negligence for Reed to leave when the loading was about to be done, and that the instrumentalities furnished to do it were unsafe. The very purpose of requiring of the master diligence in such matters is to guard against unnecessary dangers to the servant—in this case to safeguard against the possibility of the boiler rolling upon him. Kreigh v. Westinghouse, Church, Kerr & Co., 214 U. S. 249, 29 S. Ct. 619, 53 L. Ed. 984. The boiler did roll for lack of some safeguard. No unforeseeable outside force intervened to cause it. That the evidence does not clearly disclose just what made it roll would not excuse the master if it should appear to the jury from all the circumstances that it could have been prevented by ordinary care on the master's part in the respects alleged in the declaration. No contributory negligence on Ekblom's part is pleaded except that which was not proven, as above stated. Under this evidence, whether he was killed as a result of his master's negligence in any of the respects alleged was for the jury.

The evidence ruled out consisted of the opinions of a witness shown to be well experienced, as to what was from his experience the safe way to have handled the boiler, to have braced the truck, and to chock the boiler, and that some of the things done were unsafe, insufficient, or improper, he having been present and observed them. No objection was made to the sufficiency of the showing that he was expert, but only that the evidence offered was a conclusion of the witness. As an expert, his opinions on these matters, which were not matters of common knowledge, could be of help to the jury and ought to have been admitted although involving ultimate facts to be finally decided by the jury. Eastern Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477; United States Smelting Co. v. Parry (C. C. A.) 166 F. 407; Cropper v. Titanium Pigment Co. (C. C. A.)

47 F.(2d) 1038, 78 A. L. R. 737; Illinois Power & Light Corporation v. Hurley (C. C. A.) 49 F.(2d) 681. Similar evidence was admitted from another expert. The jury of course are not bound by such opinions, but they are evidence for their consideration.

For error in excluding evidence and in directing the verdict, the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.