Margretta CAMERON et al., Plaintiffs-Appellees,

v.

NEW YORK LIFE INSURANCE CO., Defendant-Appellant.

No. 14599.

United States Court of Appeals
Sixth Circuit.

April 10, 1962.

Earl F. Morris, Columbus, Ohio (Wright, Harlor, Morris, Arnold & Glander, James E. Pohlman, Columbus, Ohio, on the brief), for appellant.

Herbert R. Brown and John C. Elam, Columbus, Ohio (Vorys, Sater, Seymour & Pease, John C. Elam, Columbus, Ohio, on the brief), for appellees.

Before MILLER, Chief Judge, O'SULLIVAN, Circuit Judge, and BOYD, District Judge.

BOYD, District Judge.

The appellees (hereinafter referred to as plaintiffs) who are the beneficiaries under a $5,000.00 insurance policy on the life of their father, Walter J. Dearth, brought this action under the appellant's (hereinafter referred to as defendant) policy in the district court alleging accidental death of their father for which they claimed double indemnity benefits. The defendant company had theretofore paid the face of the policy. From an adverse jury verdict the defendant seeks reversal through this appeal.

The insured, until October 27, 1955, lived alone on his farm near Circleville, Ohio. He had led an active life and was in good health for a man 79 years of age. The day prior to October 27, 1955, he finished disking some sixty acres of farm land. Up to that time he routinely cared for his hogs, cattle and chickens. He cooked his own meals. He also cultivated a garden from which he sold vegetables at a roadside stand during the summer season.

On the morning of October 27, 1955, the insured was involved in a rather serious automobile accident near his home. He was found in an unconscious state in his car slumped over the steering wheel. He was bleeding profusely from lacerations about his head and face. There was a sizeable lump upon his forehead and one of his ribs was fractured.

Though the insured lived for forty-five days following the accident he was never again his normal self. Immediately following his accident he spent thirteen days in the hospital as a bed patient after which he was confined to his bed at home. During most of this time his mind wandered and at times his speech was disordered. He required constant nursing, attention and care. On the early evening of December 8, 1955, he lapsed into unconsciousness and was returned to the hospital where he continued in a comatose condition until his death four days later. It should be noted that the insured at no time following his accident suffered from paralysis.

The plaintiffs claim their father died from a subdural hematoma [1] which was caused by trauma or injury, received in the accident aforesaid, and that, therefore, his death resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause * * *" as required under the "double indemnity benefit" provision of the policy herein. Defendant insurance company, on the other hand, insists the insured's death "resulted * * * directly or indirectly from physical or mental infirmity, illness or disease * * *", and that, therefore, the double indem-

---

[1]. As described by Dr. Rothermich, subdural hematoma is a bleeding inside the skull but outside of the brain. This bleeding is from a vein and not an artery. As there is little pressure in the vein the blood oozes out slowly, thus allowing a clot to form and gradually compress the brain. This is a slow process and results in materially reducing a person's intelligence level, and his ability to comprehend and to think.

nity benefit clause of the insurance contract herein is not applicable. In support of this position the defendant more particularly contends that insured's death was caused by a massive cerebral hemorrhage or stroke induced by arterio-sclerosis.

The defendant raises several questions. It charges, among other things, the trial judge with error in permitting plaintiffs' expert medical witness, Dr. Rothermich, to express his opinion concerning the cause of the insured's death. The trial judge permitted this well qualified expert to be asked two questions after a full and complete statement of all of the material hypothetical facts as follows:

Question No. 1: " * * * do you have an opinion based upon reasonable medical certainty as to whether or not the death of Walter J. Dearth resulted directly, proximately and independently of all other causes from bodily injuries sustained on October 27, 1955, effected solely through external, violent and accidental causes?"

Question No. 2: " * * * ask you if you have an opinion based on reasonable medical certainty whether or not the death of Walter Dearth was the direct proximate result of injuries he sustained on October 27, 1955?"

Dr. Rothermich answered:

(To question No. 1): "It is my opinion that this man's death was due solely and entirely to the injuries received in the accident and independent of any other causes."

(To question No. 2): "It is my opinion that this man sustained an injury to the head and resultant subdural hematoma which produced his death."

The defendant contends it was not permissible to inquire of Dr. Rothermich as to an ultimate issue. Thus, the question posed is whether the answers to the hypothetical questions propounded were of such scope as to amount to an invasion or usurpation of the jury's province. We think not, since in the light of the questions and answers themselves, the full and accurate instructions by the trial judge to the jury [2] with regard to its consideration of them, and the opportunity of the jury to hear and consider the opinions of the medical experts on the defendant's side, based upon very similar questions, the jury was free to exercise its full and untrammeled judgment in the matter. Talley v. Mitchell, C.A. 6th, 1960, 275 F.2d 244; Dickerson v. Shepherd Warner Elevator Co., C.A. 6th, 1961, 287 F.2d 255, and other cases from this Circuit therein cited, including Detroit T. & I. R. Co. v. Banning, 1949, 6 Cir., 173 F.2d 752, cert. denied 338 U.S. 815, 70 S.Ct. 54, 94 L.Ed.

2. "Witnesses have been called to testify in this case which are designated in the law as medical experts who by their special means of observation, experience, training and peculiar advantages have a better or more extended means of knowing the nature and character of the subject matter inquired into on trial. Obviously, one of the elements entering into the value of the opinion of such a witness is the knowledge of the subject matter concerned which he testifies, not the knowledge which he professes but the knowledge he actually possesses. It would be proper for you to inquire into and consider the means of such knowledge of such witnesses; what opportunity they had of observing and learning the facts upon which their opinion was based; their ability and experience; their inter-est, bias or feeling or freedom therefrom; and, you give this class of testimony such weight and credit as in your judgment it is entitled to.

"Hypothetical questions, that is questions based upon supposed facts have been propounded to these expert witnesses. In order that this testimony should be of any value all of the assumed facts forming the basis of the opinion would be found by you to exist and be true. The truth of each supposition in the hypothetical question is for your determination from the evidence. The evidence consists of the testimony that has been given to you from the witness stand together with the exhibits that have been introduced and accepted into evidence."

493, and People's Gas Co. of Kentucky v. Fitzgerald, 1951, 6 Cir., 188 F.2d 198, in which latter case it is noted:

"This court has stated that the general rule permits a witness experienced in technical matters and qualified to do so to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury."

The Supreme Court of the United State said on this subject in United States v. Johnson, 319 U.S., 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546:

" * * * So long as proper guidance by a trial Court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's we ought not to be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules."

In the view here expressed we find it unnecessary to discuss United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617 so heavily relied upon by the defendant, since we do not think it has application to the facts and circumstances of this case.

 We find no merit in the criticism of the trial judge's instructions to the jury that:

" * * * In considering physical or mental infirmity, illness or disease, the court further charges you that normal considerations of age do not effect recovery under insurance contracts and are not within the meaning of the terms disease or bodily infirmity."

This instruction was in no sense prejudicial to the defendant. It did not, as contended by the defendant, place a burden upon it of showing the cerebral hemorrhage it claimed the insured suffered was due to more arteriosclerosis than is normally possessed by a person of 79 years.

The trial judge in the course of his charge reminded the jury as to the main issue a number of times; i. e., that it must find the cause of the insured's death was due entirely to accident and not disease before the plaintiffs could recover. The issue was one for the jury and there was no room for misunderstanding. The jury has resolved the issues in favor of the plaintiffs on substantial evidence that the death of the insured resulted from external, violent and accidental means. New York Life Ins. Co. v. Hoffman, C.A. 6th, 1954, 218 F.2d 465; Mutual Life Ins. Co. of New York v. Haynes, C.A. 6th, 1945, 149 F.2d 483; Nichols v. Loyal Protective Life Ins. Co., 1939, 63 Ohio App. 558, 27 N.E.2d 421.

Other questions raised by the defendant have been fully considered by the court and are found to be without merit.

The judgment of the District Court is affirmed.