**Robert HARRIS, Plaintiff–Appellee,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Defendant–Appellant.**

No. 94–5418.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1995.

Decided July 19, 1995.

L. Anthony Deal, McDonnell Boyd, Thomas J. Walsh, Jr. (argued), Wolff Ardis, Memphis, TN, William W. Ramsey, Vicksburg, MS, William M. Larsha, Jr. (briefed), Memphis, TN, for plaintiff-appellee.

John W. Chandler, Jr. (argued and briefed), Melissa Maravich, Burch, Porter & Johnson, Memphis, TN, for defendant-appellant.

Before: NELSON and BOGGS, Circuit Judges; GILMORE, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is an appeal from a judgment entered on a verdict for the plaintiff in an action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* The plaintiff, a carman who was working at night in a dimly lit railyard, allegedly injured himself when he stepped off a boxcar onto a piece of scrap iron. The defendant railroad contends that it was entitled to judgment as a matter of law because of the absence of proof that it knew of the presence of the scrap iron on its property. In the alternative the railroad contends that it should receive a new trial on any of several different grounds, including alleged errors in evidentiary rulings and the

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

failure of the trial court to instruct the jury on contributory negligence.

We conclude that although the railroad was not entitled to judgment as a matter of law, the district court erred in declining to give a contributory negligence charge. We shall therefore remand the case for a new trial. The evidentiary questions are likely to recur, and we shall address them briefly for the guidance of the district court in the retrial.

## I.

Robert Harris, the plaintiff herein, was working on the evening of March 25, 1989, at the Illinois Central Railroad Company's "C" Yard in Memphis, Tennessee. Mr. Harris testified that C Yard is more than a mile long and contains some 36 tracks; that the yard is illuminated at night by "highlights" mounted on tall poles between tracks 8 and 9 in the middle and at both ends of the yard; and that the highlights are of no help to a man working—as Harris was on the night in question—between boxcars several tracks away. In order to see what he was doing, Mr. Harris testified, he used a "headlight" affixed to his hard hat. He said he could see "good" where the beam from the headlight fell.

There was always debris in the yard, according to Mr. Harris and other witnesses. The accounts of the witnesses varied as to whether the debris was removed with any regularity, one witness testifying that the yard was cleaned up about once a year and others indicating that they were unaware of any cleanup efforts. Mr. Harris said that he had complained to the railroad about conditions in C Yard late in 1988 but had not seen any cleanup crews in the yard thereafter. He knew that debris could fall to the ground from railroad cars at any time, and he knew that he had to watch where he walked. Keeping a careful watch was not just a matter of common sense; the railroad had a specific safety rule, captioned *"GETTING ON AND OFF STANDING EQUIPMENT,"* making it mandatory that employees, "[b]efore getting off, carefully observe ground condition and be sure of firm footing."

Mr. Harris testified that his injury occurred when he stepped to the ground from the footboard of a stationary boxcar after climbing between that boxcar and another one to get across the track. He was carrying a hook used to bleed air brake lines, and he was holding onto a ladder—affixed to the side of the boxcar—from which he had descended to the footboard. He claimed that before he got on the ladder he looked at the ground beneath the footboard and did not see any debris there. When he stepped off the footboard, however, he came down on a piece of scrap iron. He testified that his left leg gave two loud "pops" and that he suffered a fall. There were no witnesses to the incident.

Mr. Harris continued to work, but found that he could not bend his left leg. When he had finished bleeding the air from the cars for which he was responsible, he reported the accident to his supervisor. The next day a railroad doctor diagnosed a strained calf muscle. A physician to whom Mr. Harris was subsequently referred by his lawyer concluded that Harris had also sustained a permanent injury to his lower back. He was ordered to refrain indefinitely from any activity involving bending, lifting, or stooping.

In March of 1992, two years after Mr. Harris had filed his F.E.L.A. suit against the railroad, an internist diagnosed him as suffering from an enlarged heart. This condition, which is not claimed to have been related to the accident, would have left him unable to work as a carman, according to the evidence, even if there had been no accident.

When the case came on for trial the railroad filed a motion *in limine* asking the court to exclude testimony on general conditions in the railyard and to exclude evidence of lost wages after the date on which the heart condition was diagnosed. The court decided to allow both types of evidence to be presented to the jury.

The railroad moved for judgment as a matter of law at the end of the plaintiff's case and again after all the evidence had been presented. The motions were denied.

Before the case was submitted to the jury the railroad asked the court to give instruc-

tions on contributory negligence and to provide a special verdict form relating to this defense. Both requests were denied.

The jury returned a verdict for Mr. Harris in the amount of $400,000. Declining to grant judgment *n.o.v.* or a new trial, the court entered judgment on the verdict. This appeal followed.

## II

### A

■■■ The F.E.L.A. is not a workers' compensation act. The only injuries compensable under the statute are those "resulting in whole or in part from the *negligence* of any of the [defendant railroad's] officers, agents, or employees...." 45 U.S.C. § 51 (emphasis supplied.) Negligence is determined under common law principles, as applied by federal courts in cases of this type. See *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949); *Adams v. CSX Trans., Inc.,* 899 F.2d 536, 538–39 (6th Cir.1990).

■■■ At common law, generally speaking, a plaintiff injured in a fall caused by a defective condition on the property of another cannot recover damages from the owner of the property without showing that the owner knew or should have known of the existence of the condition in question. This principle has not been abandoned in cases arising under the F.E.L.A., but neither has it been applied as rigorously as the Illinois Central would have us apply it here. See *Webb v. Illinois Central Railroad Co.,* 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957), where a jury was permitted to find that the Illinois Central should be charged with notice of a partially covered fist-sized cinder in its roadbed. The *Webb* Court reinstated a judgment for damages in favor of a brakeman who, while walking on the roadbed in broad daylight, slipped on the cinder and injured his

kneecap in the fall that ensued. See also *Gallick v. Baltimore & Ohio Railroad,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), where a railroad was held chargeable with notice of a dangerous insect bred in a stagnant pool of water on the railroad's right-of-way.

"We have liberally construed [the] F.E.L.A. to further Congress' remedial goal," the Supreme Court recently noted in *Consolidated Rail Corp. v. Gottshall,* ── U.S. ──, ──, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994), citing as an example the relaxed standard of causation applied in *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), a companion case to *Webb v. Illinois Central Railroad Co.* In *Rogers* the Court declared that the test of a jury case under the F.E.L.A. is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death for which damages are sought." *Id.* at 506, 77 S.Ct. at 448 (emphasis supplied).[1]

We have no reason to doubt that *Rogers, Webb, Gallick,* and similar cases that have given the F.E.L.A. a liberal application in furtherance of Congress' remedial goal remain good law today. If we are correct in this, the Illinois Central was clearly not entitled to judgment as a matter of law in the case at bar.

■■■ There was ample evidence here from which the jury could infer that while the railroad knew about debris falling off cars in its C Yard, it was lax about keeping the debris cleaned up. The railroad contends that the district court abused its discretion in letting the jury hear testimony about the general conditions in the yard, but we do not find this contention persuasive. Mr. Harris did not have to show that the Illinois Central knew about the particular

1. "Dean Prosser has written that under [the *Rogers*] test jury verdicts for the employee can be sustained upon evidence which would not be sufficient in the ordinary negligence action." *Rodriguez v. Delray Connecting Railroad,* 473 F.2d 819, 820 (6th Cir.1973) (citing Prosser, Torts (4th Ed.1971) § 80, p. 536). The F.E.L.A., as we observed in *Rodriguez,* "consistently has

been construed liberally by the courts to allow employees, injured in the course of their employment, to recover even where the negligence of the employer has been minimal." *Id.* (footnote omitted). Nevertheless, we went on to say, "the employee must still demonstrate some negligence and proximate cause." *Id.* (citations omitted).

piece of scrap iron that caused his injury, any more than the plaintiff in the "bug bite" case, *Gallick v. Baltimore & Ohio,* had to show that the Baltimore & Ohio knew about the particular insect that caused Mr. Gallick's injury. The trial court was not required to exclude evidence pertaining to general conditions in C Yard, and we are satisfied that the evidence was sufficient to support a finding of negligence on the part of the railroad.

B

■ The evidence was also sufficient to support a finding of negligence on the part of Mr. Harris. His own testimony showed that he was aware of the safety rule requiring employees to observe ground conditions carefully and be sure of their footing before getting off standing equipment; that he knew there was often debris in the yard; that he was wearing a headlight which enabled him to see well even in the shadowy area where he was working; and that it was possible for him, using the headlight, to see the ground beneath the footboard. The headlight was not aimed at the ground at the precise moment when Mr. Harris stepped off the footboard, but he claimed that he had already looked at the ground and had seen nothing.

■ This was a potentially damaging admission. If the piece of scrap iron on which he stepped was big enough to cause a fall, the jury could reasonably have inferred that it was big enough to be seen. If Mr. Harris really did look for hazards of this sort when he said he did, the jury could reasonably have inferred that he did not look carefully. Mr. Harris was under a duty to look carefully, of course, and failure to do so would have been negligence.

■ At common law, a finding that Mr. Harris was guilty of contributory negligence would have barred him from recovering any damages at all. The F.E.L.A., however, modified the common law rule; a finding of contributory negligence does not bar a recovery, but the statute provides that "damages shall be diminished by the jury in proportion to the amount of negligence attributable to [the] employee...." 45 U.S.C. § 53. Con-gress has thus mandated a rule of comparative negligence in F.E.L.A. cases. *Jamison v. Encarnacion,* 281 U.S. 635, 639, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1930).

In the case at bar the jury was not told that Mr. Harris himself, like the railroad, was under a duty to exercise due care. The jury was not told that an employee's failure to obey the safety rules would constitute negligence. And the jury was not instructed to diminish the damages in proportion to the amount of negligence, if any, attributable to Mr. Harris.

The failure to give such instructions constituted prejudicial error, necessitating a new trial. "A defendant in [an F.E.L.A. case] is entitled to an instruction on contributory negligence if there is '*any* evidence to support that theory.'" *Wise v. Union Pacific Railroad,* 815 F.2d 55, 57 (8th Cir.1987) (emphasis supplied), quoting *Meyers v. Union Pacific Railroad,* 738 F.2d 328, 331 (8th Cir. 1984). There was evidence to support that theory here, and the district court should have instructed the jury on contributory negligence along the lines proposed by the railroad.

C

When this case comes on for a new trial, assuming it is not settled in the interim, expert testimony will doubtless be offered, as it was in the original trial, on the extent of Mr. Harris' wage loss. It is therefore appropriate for us to address the issue of whether the jury should be allowed to hear evidence on the value of the earnings Mr. Harris would have received as a carman if he had worked in that capacity until normal retirement age, notwithstanding the development of a heart condition making it impossible for him to do so.

If Mr. Harris had died in 1992 of a heart attack unrelated to his fall at work, the period for which his estate could recover lost earnings would have been cut off at the point of death. See *Dixon v. International Harvester Co.,* 754 F.2d 573, 588–90 (5th Cir. 1985). If his heart condition would have rendered him incapable of working as a carman, similarly, we think it would be error to

allow testimony on his potential earnings as a carman beyond the point at which his work as a carman would have had to cease even if he had never injured his leg and back. The only case cited by the plaintiff to the contrary is *Buchalski v. Universal Marine Corp.*, 393 F.Supp. 246 (W.D.Wash.1975), a district court decision that we do not find persuasive.

Having already concluded that a new trial is necessary because of the failure to instruct the jury on contributory negligence, we need not decide whether, in light of the instructions given the jury on the wage loss issue, a new trial would have been necessitated in any event by error in the admission of evidence on lost wages. Our disposition of the case likewise makes it unnecessary for us to decide the final issue raised by the railroad on appeal, which deals with the manner in which the district court responded to a question posed to the court by the jury in the course of its deliberations.

The judgment entered by the district court is **REVERSED,** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.