74 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William J. MORRIS, Plaintiff-Appellant,
v.
WEST TENNESSEE RAILROAD; Tenneken Railroad, Defendants-Appellees.
 Nos. 94-5462, 94-5852.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1996.
 
 Before: KRUPANSKY, MILBURN, NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appellant, a railway worker for the West Tennessee Railroad ("the Railroad"), appealed the order granting summary judgment in favor of the Railroad on plaintiff's personal injury complaint brought under the Federal Employers' Liability Act, 45 U.S.C. Secs. 51-60 ("FELA"). In his complaint, the plaintiff alleged that he suffered injuries while operating a air-tire backhoe during the course of his employment. Specifically, the plaintiff alleged that the employer (1) failed to provide him with adequate training in the use of an air-tire backhoe; (2) failed to provide him with adequate assistance and supervision, by allowing him to remove a large number of cross ties in a row without stopping; (3) failed to provide him with safe and adequate equipment, by requiring use of an air-tire backhoe (which rests on the ground) as opposed to a rail-riding backhoe (which rides up on the tracks); and (4) failed to provide him with a reasonably safe place to work, by forcing him to work in muddy conditions. The defendants moved for summary judgment and the plaintiff, allegedly because of the omission of counsel, failed to respond. The district court granted summary judgment, and the plaintiff appealed. After the notice of appeal, the plaintiff, through new counsel, also filed a motion for relief from judgment under Rule 60(b), Fed.R.Civ.P., which the lower court denied. The plaintiff then filed a second appeal, based on the motion for reconsideration, which was consolidated with the first appeal.
 
 
 2
 According to his complaint, the plaintiff's injuries occurred while he was using an air-tire backhoe to remove rotten crossties from under a stretch of track and replace them with new ones. J.App. at 81. It had rained the previous night and so the railyard was muddy. Id. The air-tire backhoe straddled the tracks and, when it moved forward to remove new ties, mud built up in front of the wheels and eventually spilled onto the rail. J.App. at 85-86. Also, as the backhoe removed a tie, it often had to shake it, bump it, or tear up the ground around it. J.App. at 126-27. The plaintiff had been instructed to remove 12-15 ties in a row shortly before his injury, which resulted in mud a foot deep and 3 feet across, according to the plaintiff. J.App. at 91-98. When plaintiff attempted to step down from the backhoe, he could not step to solid ground so he attempted to step down onto a rail. Id. Because the air-tire backhoe had pushed mud up onto the rails, the rail was muddy. Id. Plaintiff lost his balance and fell onto a gravel embankment. Id. In the fall, he injured his back and other parts of his body. Id. The plaintiff testified in deposition that if the plaintiff had been using a rail-wheel backhoe, which rides upon the rail and not the ground, the mud problem would have been substantially reduced and no mud would have been forced up on the rails. Id.
 
 
 3
 A threshold issue is whether the lower court had jurisdiction to deny the plaintiff's motion for relief from judgment under Rule 60(b) so as to allow the order denying the motion to be a final appealable order. The longstanding rule is that the filing of a notice of appeal operates to transfer jurisdiction of the case to the court of appeals, and the district court is thereafter without jurisdiction except to act in aid of the appeal. Hogg v. United States, 411 F.2d 578 (6th Cir.1969). In certain circumstances, however, the appellate court in its discretion may remand a case back to the district court if the lower court has received a motion for relief from judgment and has indicated its inclination to grant the motion. In First National Bank of Salem v. Hirsch, 535 F.2d 343 (6th Cir.1976), the Sixth Circuit set out the procedures followed in such an instance:
 
 
 4
 [W]e think that the party seeking to file a Rule 60(b) motion should have filed that motion in the district court. If the district judge is disposed to grant the motion, he may enter an order so indicating and the party may then file a motion to remand in this court. Otherwise the appeal will be considered in regular course.
 
 
 5
 Id. at 346. As this passage indicates, however, even when a district judge has entered an order indicating his inclination to grant a Rule 60(b) motion, that order is without effect until the party bringing the motion moves for and obtains a remand by the appellate court. Until then, jurisdiction remains solely with the appellate court, and any orders entered by the district court are without effect. In the instant case, no remand was sought to allow the lower court to rule on the motion for relief from judgment. Accordingly, jurisdiction rested solely with the appellate court at the time the district court attempted to rule on the motion to reconsider. Since it acted without jurisdiction, the district court's order was without effect and cannot serve as a basis of appeal. The issues raised in the rule 60(b) motion and the resulting order may not be considered on appeal and are dismissed.
 
 
 6
 The district court's granting of summary judgment is reviewed de novo. City of Mount Clemens v. EPA, 917 F.2d 908, 914. Under Rule 56(e), Fed.R.Civ.P., if the defendants support their motion for summary judgment with affidavits, the plaintiff cannot rely merely on the allegations of his complaint. He must produce evidence which supports his claims. Plaintiff, however, did not offer any response to the motion for summary judgment. When the party opposing summary judgment does not present admissible evidence contradicting the affidavits of the moving party, granting of the motion for summary judgment is not mandatory; instead, the assertions in the moving party's affidavits are merely presumed to be true, if not contradicted by evidence already in the record. Fitzke v. Shappell, 468 F.2d 1072, 1077 (6th Cir.1972). Whether summary judgment should be granted still depends upon the entire record in the case, as shown by depositions, interrogatories, motions to produce, and admissions. Id. at 1078. If these evidentiary sources are sufficient to raise genuine issues of material fact, summary judgment will not be appropriate even in the absence of affidavits by the opposing party. Id. (citing Advisory Note on the 1963 Amendment to subdivision (e) of Rule 56).
 
 
 7
 Thus, we must examine the full record to discern if genuine issues of material fact exist concerning any or all of the claims brought by plaintiff. When considering this question, it is important to note that the standard of proof necessary to trigger employer liability in FELA cases is much lower than that in traditional negligence cases:
 
 
 8
 Under [FELA], the test of a jury case is whether proofs justify [the] conclusion that employer's negligence played any part, even the slightest, in producing injury or death for which damages are sought; and it does not matter that from evidence, jury could also with reason, on grounds of probability, attribute result to other causes, including employee's contributory negligence.
 
 
 9
 Webb v. Illinois, 77 S.Ct. 451 (1957); Rogers v. Missouri Pacific Railroad Co., 77 S.Ct. 443 (1957); Harris v. Illinois Central Railroad Co., 58 F.3d 1140, 1142-43 (6th Cir.1995). Accordingly, even if the employee's negligence played a part in his injuries, summary judgment for the employer is not appropriate if the employer's negligence played any part, however slight, in the employee's injuries.
 
 
 10
 Ample evidence existed in the record, even without a response to the motion for summary judgment, to indicate that the defendants were not entitled to judgment as a matter of law. First, evidence exists in the depositions of plaintiff and his superiors concerning his lack of training and whether it was proximate cause of his injuries. J.App. at 71 (Morris testifying as to the extent of his training); J.App. at 121 (Miller, supervisor, testifying that "I didn't have to give him any training."). Second, the depositions of plaintiff and his coworkers also present evidence supporting his claim that it was negligence on the part of his supervisors to allow, and indeed instruct, plaintiff to remove more than 3 or 4 crossties in a row in muddy conditions. In his deposition, plaintiff testified that removing more than 3-4 crossties requires moving the backhoe forward. When the backhoe is moved forward, mud builds up on the wheels as they slide through the mud. The excess mud spills over onto the rail. Both plaintiff, J.App. at 93-94, and the supervisor, J.App. at 135, testified that as the ties are removed, the bucket of the backhoe often also digs up dirt around the tie. The result is "worked up" ground, which, on a wet day, becomes a muddy pit. If ties had been reinserted as the team moved down the track, the size of the muddy area would have been smaller and plaintiff may have had a solid place to step down other than the rail. Whether this is actually the case is a question for the finder of fact to answer.
 
 
 11
 The plaintiff asserted in his complaint that the railroad forced him to use inadequate and unsafe equipment by directing him to use an air-tire backhoe, which rests on the ground straddling the tracks, instead of a rail-wheel backhoe, which rides on the rails and out of the mud. If the rail-wheel backhoe had been used, its wheels would not have been in the mud, and thus, according to the plaintiff, would not have pushed mud onto the rail. The lower court rejected this argument relying on cases which held that "FELA does not require an employer to furnish the latest or best equipment for its employees, nor to discard equipment upon the discovery of later improvements, provided that the equipment in use is in proper condition and reasonably safe to operate." J.App. at 11 (Order Granting Summary Judgment) (citing B & O R.R. v. Groeger, 266 U.S. 521, 529 (1925) and Rodriguez v. Delray Connecting R.R., 473 F.2d 819, 821 (6th Cir.1973)). The plaintiff did not assert that the railroad should have provided the best possible equipment. Instead, plaintiff asserted that the use of an air-tire backhoe was unreasonably dangerous in the muddy conditions which prevailed that day. In support, plaintiff provided testimony which demonstrated that its use produced muddy conditions and left him without a safe method of descent from the backhoe. Under the FELA, it is for the finder of fact to determine whether an air-tire backhoe was "reasonably safe to operate" under muddy conditions. Rodriguez, 473 F.2d at 821.
 
 
 12
 Finally, the lower court granted summary judgment to defendants on plaintiff's claim that the muddy conditions that day rendered the yard an unreasonably unsafe workplace. The court relied upon Detroit T & I R.R. v. Banning, 173 F.2d 752 (6th Cir.), cert. denied, 338 U.S. 815 (1949), for the proposition that "rainy days and muddy conditions are not uncommon in railyards, and requiring employees to work in such conditions is not inherently negligent." J.App. at 13. While this statement indicates that muddy conditions will not usually be deemed unsafe, the plaintiff presented evidence supporting his claim that the conditions that day were more severe than usual. In his deposition, the plaintiff testified that the mud where he was to step down was a foot deep, J.App. at 93, and that "There wasn't any way to step over the rail to solid ground. You'd have to jump." Furthermore, the supervisor, in his deposition testified that they were "jerking ties in and out and that's tearing up the ground" and that "It was a little bit muddier there than usual", but insisted that "it wasn't nothing unusual for us to do that." J.App. at 137. A railroad is not required to provide an absolutely safe workplace, but it is required to provide a reasonably safe workplace. See Harris, 58 F.3d at 1143. The plaintiff presented evidence in his and his supervisor's depositions which raises a genuine issue as to whether the muddy conditions on that day rendered the railyard an unsafe work place. Because this genuine issue of material fact exists, summary judgment was inappropriate.
 
 
 13
 Accordingly, the judgment entered by the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.