William C. **COLLINS** and Florence M. Collins, Appellants,

v.

B. F. **GOODRICH COMPANY**, Appellee.

No. 76–2031.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1977.

Decided July 28, 1977.

Clifford N. Jarrett, Kansas City, Mo., for appellants; Bruce G. Heavner and James C. Jarrett, Kansas City, Mo., on brief.

Joseph A. Sherman, Kansas City, Mo., for appellee; Robert K. Ball, II, Kansas City, Mo., on brief.

Before GIBSON, Chief Judge, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is a products liability case. Appellants William C. and Florence M. Collins, husband and wife (herein referred to singularly as Collins), brought this action against B. F. Goodrich Company (Goodrich) to recover for injuries sustained by Mr. Collins when an aircraft wheel exploded after being inflated. Jurisdiction was founded on diversity, Collins being a citizen of Missouri and Goodrich a foreign corporation, 28 U.S.C. § 1332. From a verdict and judgment in favor of Goodrich, Collins appeals. We affirm.

On April 4, 1970, the day of his accident, Collins was a certified aircraft and power plant mechanic employed by Trans World Airlines (T.W.A.). Together with fellow mechanic Raymond Dare, Collins was assigned to service a Lockheed Jet Star aircraft. A visual inspection revealed the two nose wheel tires to be worn and in need of replacement. Upon mounting two new wheels Collins and Dare began inflating the left tire. After being inflated the wheel assembly suddenly fragmented causing the injuries complained of.

Both the tire and the failed wheel assembly on which it was mounted had been manufactured by Goodrich and sold to T.W.A. The testimony established that the operational inflation capacity of the tire was between 205 and 220 pounds per square inch (p.s.i.). The apparatus used to inflate wheels of this kind consists of a cylindrical nitrogen air tank equipped with a dual system of hoses and valves for dispensing either high pressure or low pressure air. The

low pressure side of the system is equipped with a relief valve which allows the flow of nitrogen into the tire to be regulated automatically; by setting a pressure gauge at the desired level, the tire will receive air only to within 50 p.s.i. of the pressure indicated on the gauge. The high pressure system is equipped with a "globe" valve not possessing the same relief characteristics as the low pressure valve. Use of high pressure air thus necessitates the flow of air into the tire to be regulated manually.

Beginning in 1968 T.W.A. established a safety rule requiring their mechanics to use only regulated low pressure nitrogen when inflating aircraft tires. Collins testified that he understood the purpose of this rule was to lessen the danger of fragmentation which sometimes accompanies overinflation of a tire. To remind the mechanics of its policy, T.W.A. affixed to each tire inflation system a plaque which read: WARNING— FOR TIRE INFLATION USE LOW PRESSURE AIR ONLY.

On the day of his accident, Collins began inflating the tire by attaching the low pressure hose to the valve stem of the tire with the pressure gauge set at 225 p.s.i. After several minutes, during which time the tire had inflated to a pressure of approximately 175 p.s.i., Collins removed the low pressure hose and determined that a new tank of nitrogen was required to top off the tire to the desired level of 210 p.s.i. Collins attached the high pressure hose of the new tank to the tire. He then instructed Dare to open the high pressure valve and shortly thereafter to shut it off again. Collins then removed the high pressure hose and the wheel exploded.

On trial Collins contended that the explosion was caused by a hidden and unknown defect in the wheel assembly, perhaps a nonmetallic inclusion in the rim, but offered no direct proof to substantiate this claim. Goodrich maintained that the wheel failed due to overinflation of the tire resulting from use of the unregulated high pressure side of the inflation system. The cause was submitted to the jury on a theory of strict liability in tort. Following a verdict in favor of Goodrich the trial court entered judgment accordingly and denied Collins' motion for a new trial. Collins now seeks a reversal alleging that the trial court erred: (a) in failing to admit into evidence the results of certain experimental tests conducted by the plaintiff; and (b) in instructing the jury on an affirmative defense of assumption of risk.

### EXCLUSION OF EVIDENCE

■ Appellant sought at trial to introduce into evidence the results of several experimental tests conducted in 1975 in which a tire and wheel assembly similar to the one in question was properly inflated using the high pressure side of a nitrogen inflation system. The purpose of these tests was to demonstrate that high pressure air can be used without overinflating the tire and thus tending to show that the explosion that injured Collins must have resulted from a defect in the wheel itself. This evidence was offered several times and each time was excluded upon the objection of Goodrich.

We find no error in these rulings. Evidence of experimental tests is not admissible unless a foundational showing is made that the tests were conducted under conditions substantially similar to actual conditions. The admissibility of such evidence rests largely in the discretion of the trial judge and his decision will not be overturned absent a clear showing of an abuse of discretion. *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir. 1969); *Lietz v. Snyder Manufacturing Co.*, 475 S.W.2d 105, 107 (Mo.1972). In the instant case neither Collins nor Dare was able to testify with certainty as to the length of time the high pressure hose was releasing air into the tire before the wheel fragmented. Plaintiff's witnesses were likewise unable to state unequivocally whether the valve used in the experiments was the same type valve used by Collins. The type of valve used and the duration of the connection between the tire and the tank relate significantly to the question of whether the tire was overinflated. In these circum-

stances we conclude that the trial judge did not abuse his discretion in refusing to admit the test results into evidence.

## JURY INSTRUCTION

■ Appellant also asserts error in the trial court's instruction to the jury relative to assumption of risk. The challenged instruction was given as follows:

> * * * I instruct you that if you believe from the evidence that the manner in which plaintiff used the nitrogen bottle was in fact dangerous, that plaintiff knew such use was dangerous, and that he voluntarily and unreasonably exposed himself to such danger, *and thereby caused his injury,* then your verdict must be for the defendant. (Emphasis supplied.)

Appellant contends that this instruction is actually one of contributory negligence and not assumption of risk, and therefore is not available to the defendant under Missouri law.

In products liability cases Missouri has adopted the rule of strict liability set out in Restatement (Second) of Torts § 402A (1965). *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 364 (Mo. 1969). The rule announced in the *Keener* case is that "contributory negligence" is not a defense to strict liability. However, the "defense which consists of voluntarily and unreasonably encountering a known danger * * * will, in general, relieve the defendant of strict liability." *Id.* at 365; *see* Restatement (Second) of Torts § 402A, Comment n at 356 (1965). The court in *Keener* chose to refer to this defense as one of "contributory fault." However denominated, it is clear that the defendant is not liable if the plaintiff voluntarily encounters a known hazard and thereby produces his own injury.

Collins insists that the defense of contributory fault is applicable only if the plaintiff has knowledge of the *defective condition* of the product, and does not apply where the known danger consists only of the *manner* in which the product is used. This argument is apparently derived from the follow-

ing passage from the court's opinion in *Keener*:

> Dayton urges that Harold Keener must be convicted of "contributory negligence as a matter of law" because he lifted the pump out of the sump while standing ankle deep in water, with no rubber gloves or rubber boots, and with the pump plugged into an electric outlet. Dayton argues that this "was a voluntary exposure to a known danger." In a sense, the argument is of some persuasion. However, it misses the mark in this case involving strict liability in tort. There is no evidence * * * that Harold Keener had knowledge that the pump was not equipped with a ground wire or an overload protector. Therefore, there is no evidence justifying a finding that Harold Keener became chargeable with knowledge of the "dangerous potentialities" of the pump *by reason of such defects.* * * * We agree that Harold Keener voluntarily exposed himself to a dangerous situation *if* he knew the pump was defective. However, there is no evidence to show that he knew the pump was defective. In these circumstances, plaintiff is not barred from recovery under a theory of "contributory fault." *Id.* at 365 (emphasis in original; citation omitted.)

From this passage, Collins argues that his use of high pressure nitrogen to inflate the aircraft tire is comparable to Keener's handling an electric pump while standing ankle deep in water. Each relates to the manner in which the product was used; each was dangerous under the circumstances. Since neither Keener nor Collins was aware of any defect in the product, even knowledge that they were using the product in a dangerous manner should not, so the argument goes, exonerate the seller.

A fundamental distinction exists between the facts of *Keener* and the instant case. The passage quoted above makes clear that the court was satisfied that the "dangerous potentialities" of the sump pump stemmed from the fact that it was not equipped with a ground wire or an overload protector.

This fact, of which Keener was unaware, rendered the product "defective." Keener's use of the pump, apparently "dangerous," was rendered unreasonably so by the absence of a ground wire. The injury would not have resulted had the pump been so equipped, notwithstanding the manner of Keener's use. On the record in the instant case there can be no question that overinflation of a tire can, by itself, cause a wheel to come apart. Collins testified that he knew this to be true. The rule that a seller cannot overcome liability for his defective products by pointing to the negligent conduct of the plaintiff assumes that the defect in fact caused the injury. The rule was never intended to replace the requirement that the plaintiff prove the defect caused his injury. That such proof is indispensible to the plaintiff's right to recover is clear. *Maryland Casualty Co. v. Dondlinger & Sons Const. Co.,* 420 F.2d 1368, 1371 (8th Cir. 1970); *Rogers v. Toro Manufacturing Co.,* 522 S.W.2d 632, 637 (Mo.App.1975); *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 366 (Mo.1969); Prosser, The Law Of Torts, § 103 at 671–72 (4th ed. 1971).

The trial court's instruction not only required the jury to find that Collins voluntarily and unreasonably exposed himself to a known danger, but also that in so doing he "thereby caused his injury." For the jury to render its verdict for defendant on this charge, it was required to find that a necessary element of the plaintiffs' right to recover, proof that the alleged defect caused the injury, was not made. Therefore, we conclude that giving the challenged instruction was not error.

The judgment is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my judgment, the instruction complained of should not have been given. Under the facts, Collins was at most contributorily negligent in his use of the nitrogen bottle. He simply inflated the tire to a higher pressure than he should have. He did so under the mistaken impression that a "T valve would stop the flow of high pressure nitrogen" before the pressure reached explosive levels. Such negligence is not a bar to recovery. Something more is required. *See Williams v. Brown Manufacturing Company,* 45 Ill.2d 418, 261 N.E.2d 305 (1970); Note, *A Reappraisal of Contributory Fault in Strict Products Liability Law,* 2 William Mitchell L.Rev. 235, 239 (1976). Even if one assumes that the facts justify an instruction on assumption of risk, the one given was ambiguous and misleading in failing to make clear the difference between contributory negligence and assumption of risk. Finally, and most importantly, the language of the Missouri Supreme Court in *Keener v. Dayton Electric Manufacturing Company,* 445 S.W.2d 362, 364 (Mo.Sup.1969), cited by the majority, is applicable here. Collins knew that it was dangerous to overinflate a tire; he did not know that the procedure he used would lead to that result.

Had an appropriate instruction been given, the jury could have concentrated on the main issue, *i.e.,* whether the tire rim was defectively designed. As it was, they may have been misled. I believe that the Supreme Court of Missouri would require a new trial. We should do the same.