Linda JONES, Administratrix of the Estate of John Vernon Jones, deceased, Appellant,

v.

STEMCO MANUFACTURING COMPANY, INC., a Texas Corporation dba Garlock, Inc., a Delaware Corporation, and Oklahoma Truck Supply Assoc., Inc., an Oklahoma Corporation, Appellees.

No. 52554.

Supreme Court of Oklahoma.

Feb. 3, 1981.

Rehearing Denied March 16, 1981.

---

Robert D. Baron, Berry, Baron & Berry, Oklahoma City, for appellant.

Harry R. Palmer, Jr., Oklahoma City, for appellee, Stemco dba Garlock.

K. David Roberts, Oklahoma City, for appellee, Oklahoma Truck Supply Assoc., Inc.

SIMMS, Justice:

This is an appeal from a jury verdict for the defendants in a manufacturers' product liability action. Plaintiff (appellant) claims the trial court erred by admitting the results of an inadmissible and prejudicial out-of-court experiment, and by using the word "fault" in the instructions to the jury.

Plaintiff brought her action for the wrongful death of her husband. On the evening of February 1, 1975, plaintiff's husband was driving a loaded tractor-trailer truck owned by American Farm Lines west

on Interstate 40. He was following a similar truck (No. 2032) owned by the same company. Approximately 50 miles from the American Farm Lines yard, the first truck caught fire and lost a drive wheel which rolled to the center of the highway. The truck driven by plaintiff's husband came around a curve, hit the wheel, went out of control and off a bridge, resulting in the death of the driver and his passenger.

Earlier that day, an American Farm Lines mechanic noticed oil leaking from the drive wheels of truck no. 2032. He removed the wheels and replaced an oil "hub seal" with one manufactured by the defendant, Stemco Manufacturing Co., Inc., and sold by the defendant, Oklahoma Truck Supply Assoc., Inc. Plaintiff claims that this "hub seal" was defective, causing truck no. 2032 to catch fire and lose its wheel, resulting in the accident in which her husband died.

Plaintiff's only expert witness was a metallurgist from Houston, Texas. He testified that in his opinion, based on post-accident investigation of the Stemco "hub seal" and the axle assembly of truck no. 2032, the leather skirt around the Stemco seal, which is designed to hold the oil in the axle, came loose, allowing oil to escape. He testified that this caused an insufficient supply of oil to reach the outer wheel bearing, which then caught fire, destructed, and caused the wheel to come off the axle. He further testified that this loosening of the leather skirt would constitute a defect in the Stemco oil seal.

The defendants introduced the testimony of two Stemco employees that, in their experience, if the leather skirt had come loose, there would have been a massive loss of 90 weight differential oil, which would have covered the entire wheel, axle, and brake assemblies. Testimony and photographs introduced showed very little oil covering these assemblies after the accident.

The defendants then introduced the testimony, over plaintiff's objection, of Dr. Donald Boyd, Professor of Mechanical and Aerospace Engineering at Oklahoma State University. His testimony was based on the results of the experiment complained of on appeal.

Dr. Boyd testified that he removed the drive wheels of a truck that had a similar axle design to that of truck no. 2032, and a hub seal similar to Stemco's, but with a rubber (instead of a leather) skirt holding in the oil. He cut this rubber skirt purposefully to induce an oil leak, and then drove the truck a number of miles. He then testified that this experiment showed that if the oil hub seal had leaked, there would have been a significant amount of oil thrown out of the axle and onto the wheel, axle, and brake assemblies.

Dr. Boyd concluded, based on this experiment, and on the photographs of the accident vehicle no. 2032, that the truck lost its wheel when a faulty outer wheel bearing overheated, not because of a defective oil seal.

Plaintiff objected to the admission of this testimony because of alleged dissimilarities between the tested vehicle and the accident vehicle no. 2032. On questioning by the Court, Dr. Boyd admitted some dissimilarities, but claimed that the conditions were sufficiently similar for him to render an opinion of which he could be confident.

■ Defendants correctly cite the rule in Oklahoma that experiments may be admissible even if not done under identical conditions as those of the incident involved, and, if done under reasonably similar conditions, the condition under which the experiment was made goes to the weight of the evidence but not to its admissibility. *C. F. Church, etc. v. Golden, Okl., 429 P.2d 771 (1967).* Further, that the qualifications of an expert witness and the admissibility of experiment evidence are matters generally within the discretion of the trial court, which will not be reversed unless an abuse is clearly made to appear. *Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330 (1957). Sinclair Oil & Gas Co. v. Albright, 161 Okl. 272, 18 P.2d 540 (1933).*

Defendants contend that the trial court carefully and correctly exercised its discretion, admitting the testimony after exten-

sive questioning of the witness. Plaintiff claims that the conditions of the experiment were so dissimilar to those of the accident that the trial court abused its discretion by admitting the testimony based thereon.

The circumstances under which an experiment is conducted do not merely go to the weight of such evidence. The experiment must possess sufficient probative value to warrant its admissibility initially. *Enghlin v. Pittsburg County Ry. Co., 169 Okl. 106, 36 P.2d 32 (1934).* Generally, evidence as to the results of an experiment is admissible only where it is shown that the conditions under which the experiment was made were the same or similar to the circumstances prevailing at the time of occurrence involved in the controversy. *Drake v. Tims, Okl., 287 P.2d 215 (1955).*

In *Ruth Fuel Co. v. Nichter et al., 174 Okl. 601, 51 P.2d 502 (1935),* we said:

"... the criterion for the admissibility of such evidence is whether such evidence tends to enlighten the jury and enable them to more intelligently determine the issue presented. Where the experiment offered is inconclusive or raises, or may raise, a number of collateral issues, or is not a sufficiently precise duplication of material facts being on a particular issue, then such evidence should not be admitted."

Plaintiff cites numerous dissimilarities of conditions in support of her proposition that the experiment and the testimony resulting therefrom were inadmissible: (1) the experiment vehicle was a wrecker, and 12 years older than truck no. 2032, which was used for hauling freight; (2) the hub seal destroyed in the experiment vehicle was not a Stemco seal, and was in fact of unknown manufacture and composition; (3) the experiment vehicle had a different brake assembly than that of truck no. 2032; (4) the witness did not know the mileage of the experiment vehicle; (5) there was no testimony of the similarity of the type and condition of the wheel bearings of the two vehicles; (6) the experiment vehicle was driven in a "stop and go" manner on a winding road while truck no. 2032 was driv-

en at a steady speed on an interstate highway; (7) there was no similarity between the actual speed of the two vehicles; (8) the experiment vehicle had no load on the fifth wheel, as had truck no. 2032; (9) the experiment vehicle was not set on fire to see what effect this would have on the existence of oil around the wheel assembly; and, (10) there was no evidence that the size of the defect (leak) created by the witness was in any way similar to the defect claimed by plaintiff's witness to be the cause of the accident.

On review of the record, we conclude that the experiment admitted was not a sufficiently similar duplication of the conditions at issue to warrant its presentation to the jury, and the trial court abused its discretion by admitting testimony based thereon. Further, plaintiff was clearly prejudiced by its admission, especially considering that the plaintiff first learned of the experiment when it was offered into evidence at the trial.

Since this matter may come for re-trial, we find it necessary to address plaintiff's next proposition. Plaintiff contends that the use of the word "fault" in the jury instructions was improper in a manufacturers' products liability case. The instructions specifically complained of are as follows:

"Court's Instruction No. 2

"The plaintiff, in her capacity as administratrix of the estate of John Vernon Jones, deceased, has filed her petition in this case seeking judgment against the defendants for damages by reason the *fault* of the defendants in the death of John Vernon Jones. [emphasis added]

\* \* \* \* \* \*

Plaintiff asserts that by reason of the *fault* of defendants the plaintiff, as such administratrix, is entitled to recover damages for the pain endured by the deceased between the accident and his death, medical and funeral bills, the pecuniary loss suffered by Linda Jones as the widow of the deceased and for the pecuniary loss suffered by the three minor children of

the deceased. She prays judgment accordingly. [emphasis added]

"Court's Instruction No. 3

 \* \* \* \* \* \*

"A defendant who is at *fault* is not responsible for an accident unless such *fault* was the proximate cause of the accident. [emphasis added]

"Court's Instruction No. 4

 \* \* \* \* \* \*

"The plaintiff contends that the accident was caused by the *fault* of the defendant, Oklahoma Truck Supply Assoc. Inc., and the defendant, Stemco Manufacturing Company, in that the defendant, Stemco Manufacturing Company manufactured, and the defendant, Oklahoma Truck Supply sold, a hub seal which was unreasonably dangerous and that the dangerous quality of the hub seal caused the accident and resultant death of John Vernon Jones." [emphasis added]

Plaintiff claims that the word "fault" ordinarily connotes "negligence", and that therefore the word should not be used in jury instructions in manufacturers' products liability. *Kirkland v. General Motors Corp., Okl., 521 P.2d 1353 (1974).* Defendants argue that the word "fault" was used throughout the trial synonymously with "defect", and does not ordinarily mean negligence. They further claim that the use of the word "fault" five times in fourteen pages of instructions did not mislead the jury, and that taken as a whole, the instructions fairly and reasonably presented the issues to the jury. *Great Atlantic and Pacific Tea Company v. Mullen, Okl., 301 P.2d 217 (1956).*

 We do not think that the word "fault" automatically connotes concepts of negligence in the minds of a lay jury. In the instructions complained of, the word was used in reference to the "fault" of the defendants in allowing a defectively dangerous product to enter the market place. In *Kirkland, supra,* we expressly noted semantic difficulties that are encountered with our adoption of the manufacturers' products liability cause of action. This case is illustrative of these semantic problems. To one, "fault" means negligence, to another, it means defect. Determinative in this appeal is what it meant to the jury.

*Kirkland, supra,* did not make manufacturers and sellers insurers of their products. At page 1365, we said:

"Although the manufacturers' products liability for injuries caused by defective products described in this opinion is neither grounded in negligence or breach of implied warranty, *responsibility* for the defect must still be traced to the proper defendant. Where the product is of sophisticated design and construction, of if the product reaches the consumer in a sealed container, varying degrees of difficulty are encountered in tracing *this responsibility.* The fact that the plaintiff may not be able to ascertain whether the manufacturer or some other party who handled the product before it reached the ultimate consumer is *responsible* is a good reason for naming all of them as parties defendant." [emphasis added]

It is this responsibility that is referred to in the court's instructions where they use the word "fault". It is not a concept exclusively reserved for negligence actions. In *Garner v. Halliburton Co., 10th Cir., 474 F.2d 290 (1973),* decided before *Kirkland, supra,* the Court noted:

"Regardless of whether the action is thought of in terms of liability for negligence or implied warranty ... or as a strict liability case, it is essential that there be evidence to establish that the defendant acted or failed to act in relationship to the plaintiffs in such a manner as to create an unreasonable risk or harm ... or the defendant must have created a defective condition unreasonably dangerous to the user or consumer ..."

 \* \* \* \* \* \*

"... the deficiency which we see in the case is that the plaintiffs depend on the surrounding circumstances to establish liability and yet they have no basic fact sufficiently strong to give rise to the

inferences which are indispensable to an action sounding in any of the theories advanced. Here the circumstances do not bespeak the *fault* of [defendant]. Indeed, the circumstances are consistent with the conclusion that no one was *at fault* because many factors could cause gas to escape ... In this respect the case is vastly different from *Marathon [v. Kilpatrick, Okl., 418 P.2d 900 (1965)], Speed Fastners [v. Newsom, 10th Cir., 382 F.2d 395 (1967)], and White Motor [v. Stewart, 10th Cir., 465 F.2d 1085 (1972)].* In each of these cited cases there was *fault* in the air, so to speak, and also *fault* attributable to the defendant ..." [emphasis added]

We agree with the reasoning expressed by the Alaska Supreme Court on a similar question concerning the use of the word "fault" in jury instructions in a products liability case. In *Caterpillar Tractor Co. v. Beck, Alaska, 593 P.2d 871 (1979)* the court said:

"Use of the word 'fault' may engender some theoretical and semantic confusion when comparing the manufacturers' strict liability with the plaintiff's negligence, and, consequently, it should be avoided in instructing the jury. Nevertheless, we do not believe the jury was misled in this case ..."

"First, as we have stated above, strict products liability is not absolute liability but stems from the existence of a defect. The production and marketing of a defective product is a tantamount to 'fault' in the sense that we will impose legal responsibility for it ..."

 We agree that the use of the word "fault" should be avoided because of the semantic confusion warned of in *Kirkland, supra.* It would be less confusing to use the term "responsibility" or "defect" attributable to one party or another as it is used in that case. However, we do not think the instructions as stated in the instant case misled the jury. We find no reversible error in the complained of instructions. However, from and after the date of this opinion, the use of the word "fault" in the court's instructions in a manufacturers' products liability case is disapproved.

REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, HODGES, HARGRAVE and OPALA, JJ., concur.

LAVENDER, J., dissents.