Stephen **WHITEHEAD** and Deborah Whitehead, Plaintiffs and Appellees,

v.

**AMERICAN MOTORS SALES CORPORATION** and Jeep Corporation, Larry Anderson, Variable Annuity Life Insurance Company, Defendants and Appellants.

No. 19695.

Supreme Court of Utah.

Nov. 19, 1990.

Rehearing Granted Nov. 19, 1990.

---

**4.** 635 P.2d 39 (Utah 1981).

**5.** *Id.* at 41.

C. Keith Rooker, Patricia W. Christensen, and Thomas B. Green, Salt Lake City, for defendants and appellants.

Jackson Howard and Leslie W. Slaugh, Provo, for plaintiffs and appellees.

HOWE, Associate Chief Justice:

Defendants American Motors Sales Corporation and Jeep Corporation (AMC/Jeep) appeal a judgment awarded plaintiff Stephen Whitehead on a products liability claim.

On October 16, 1979, Deborah Whitehead was driving south on I–15 near Orem, Utah, in a 1972 Jeep Commando that she had borrowed from her father. Her husband, Stephen, was riding in the passenger seat. Defendant Larry Anderson was returning home from work, in his automobile, a short distance behind the Whiteheads. The Oldsmobile station wagon he was driving was traveling approximately fifteen miles per hour faster than the Commando. The Oldsmobile struck the Commando on the left rear corner; the Commando went out of control and rolled. Stephen Whitehead suffered a spinal injury and was rendered a paraplegic.

Plaintiffs Deborah and Stephen Whitehead filed their original complaint on November 21, 1979, naming Anderson as defendant. The complaint was later amended, adding Anderson's employer, Variable Annuity Life Insurance Company,[1] and AMC and Jeep as defendants.

During the nearly four years between the filing of the original complaint and the beginning of trial, the parties engaged in extensive discovery. Plaintiffs propounded three sets of interrogatories to AMC/Jeep. Their failure to timely answer the interrogatories brought motions by plaintiffs to compel discovery. AMC/Jeep's answers, when received, prompted a motion to strike as unresponsive and additional motions to compel discovery by plaintiffs. A hearing on those motions was held on October 29, 1982, where Judge Sorensen[2] went through the interrogatories and answers. He modified some of the questions, gave orders for supplemental answers to be given, and stated that if the answers stood as given, he would sustain objections to evidence not conforming with the answers. Plaintiffs orally asked for sanctions against AMC/Jeep for failure to cooperate in discovery. While no formal motion was made and no order for sanctions was ever issued, plaintiffs did file a motion in limine after the supplemental answers were filed seeking to prohibit AMC/Jeep from introducing evidence pertaining to the subjects of certain interrogatories. The court reserved ruling on the motion until the evidence was offered.

Plaintiffs also filed a motion in limine on October 7, 1983, regarding the admissibility of a film produced by Dynamic Science that showed Jeep CJ–5s rolling over in staged tests. Upon a prescreening of the film and over AMC/Jeep's objection, the judge ruled that the film was admissible. Plaintiffs also moved to exclude all evidence as to the availability and their nonuse of seat belts. After reviewing memoranda of the parties and proffers of proof, the court barred references to the availability or nonuse of seat belts.

American Motors Sales Corporation filed its answer to the complaint in September 1983, over three years after being named in the amended complaint and just one month prior to the trial. It raised Utah Code Ann. § 78–15–3(1) (1987) as a defense. This statute bars the bringing of a products liability action "more than six years after the date of initial purchase for use or consumption." Jeep Corporation moved to amend its answer to also include this defense; the motion was denied.

Trial commenced on October 19, 1983, and continued for three weeks. The jury determined that AMC and Jeep were negligent in the design of the vehicle and award-

---

1. Variable Annuity Life Insurance has filed a separate appeal on the issue of vicarious liability. *See Whitehead v. Variable Annuity Life Insurance Co.*, 801 P.2d 934 decided also today.

2. Judge Sorensen, after hearing most of the pretrial matters, retired and did not preside at the trial.

ed damages to Stephen Whitehead. AMC and Jeep appeal, raising several issues which we will separately consider.

### I.

■ Defendants contend that they should have been allowed to interpose a defense based on Utah Code Ann. § 78–15–3 (1987), which provides that product liability actions are barred if brought "more than six years after the initial purchase." In *Berry v. Beech Aircraft*, 717 P.2d 670 (Utah 1985), we held that statute to be unconstitutional; therefore, defendants' point is moot.

### II.

■ Defendants contend that the court erred in admitting plaintiffs' films of Jeep CJ–5s. In reviewing questions of admissibility of evidence at trial, deference is given to the trial court's advantageous position; thus, that court's rulings regarding admissibility will not be overturned "unless it clearly appears that the lower court was in error." *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986); *see also Bullock v. Ungricht*, 538 P.2d 190, 192 (Utah 1975); *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985); *see also Collins v. B.F. Goodrich Co.*, 558 F.2d 908 (8th Cir.1977).

■ The criteria for establishing the admissibility of crash test films, such as those in issue here, are that the data be relevant, that the tests be conducted under conditions substantially similar to those of the actual occurrence, and that its presentation not consume undue amounts of time, not confuse the issues, and not mislead the jury. *Endicott v. Nissan Motor Corp.*, 73 Cal.App.3d 917, 141 Cal.Rptr. 95 (1977); *Culpepper v. Volkswagen of America, Inc.*, 33 Cal.App.3d 510, 109 Cal.Rptr. 110 (1973); *Jackson v. Fletcher*, 647 F.2d 1020 (10th Cir.1981); *Renfro Hosiery Mills Co. v. National Cash Register Co.*, 552 F.2d 1061 (4th Cir.1977); *see Weaver v. Ford Motor Co.*, 382 F.Supp. 1068 (E.D.Pa.1974), *aff'd*, 515 F.2d 506, 507 (3d Cir.1975) (without published opinion); *see also Collins v. B.F. Goodrich*, 558 F.2d at 910.

■ Defendants objected to admission of tests of CJ–5s on the basis that the CJ–5 has a 20–inch shorter wheelbase, giving it different steering and handling characteristics than the Commando. Defendant also objected on grounds that the tests were not substantially similar to the accident conditions. The tests were "J turns" where 588 degrees of steering were suddenly input while a constant vehicle speed was maintained. The test vehicles had also been "specially prepared" to accentuate the rollovers depicted in the films. The requirements of "substantial similarity of conditions" does not require absolute identity; however, they must "be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular *issue* to which the test is directed." *Illinois Central Gulf R.R. v. Ishee*, 317 So.2d 923, 926 (Miss.1975) (emphasis added). The films here were offered to show the handling characteristics of the Jeep Commando. Plaintiffs' experts testified at length that the handling characteristics of the CJ–5s shown in the tests and the Commando were substantially similar. Defendants by cross-examination and presentation of their own evidence endeavored to bring out the differences between the test and the accident and between the vehicle tested and the vehicle in question.

Given our standard of review of the admissibility of evidence at trial, we cannot clearly say that the trial court was in error in admitting plaintiffs' films in light of the foundation laid by their experts. As the trial court stated in admitting the films, any differences between the tests and the accident here would go to the weight the jury would give the evidence. *Jones v. Stemco Mfg. Co.*, 624 P.2d 1044, 1046 (Okla.1981); *see Lopez v. Allen*, 96 Idaho 866, 871, 538 P.2d 1170, 1175 (1975).

### III.

■ Defendants next contend that the trial court erred in limiting their cross-examination of plaintiffs' expert witnesses. While unduly harsh limitation of a key expert witness can amount to prejudicial error, the proper scope of cross-examination

is within the sound discretion of the trial court and should not be disturbed absent a showing of abuse. *State v. Starks*, 581 P.2d 1015 (Utah 1978); *State v. Anderson*, 27 Utah 2d 276, 495 P.2d 804 (1972); *State v. Fox*, 22 Utah 2d 211, 450 P.2d 987 (1969); *N.V. Maatschappij v. A.O. Smith Corp.*, 590 F.2d 415, 421 (2d Cir.1978). In *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978), the Wyoming court held that it was prejudicial error to refuse to allow cross-examination regarding a critical aspect of the plaintiff's proof. There the court stated:

> Having offered his expert opinion, the witness exposes himself to interrogation which ordinarily would have no place in the cross-examination of a factual witness, but the expert exposes himself to the most searching kind of investigation into his qualifications, the extent of his knowledge and the reasons for his opinion, including the facts and other matters upon which it is based.

*Id.* at 1133.

Defendants contend that there were several instances where the trial court's limiting of cross-examination prevented them from examining the basis of opinions offered by plaintiffs' experts. In his direct testimony, plaintiffs' expert, Mr. Anderson, testified that the Jeep Commando was defective because its track width was narrow and its center of gravity high, making it easily susceptible to rollovers. He also testified concerning the handling characteristics of Blazers, Chevy Chevettes, and CJ–7s. On cross-examination, he was asked:

Q: Are there other vehicles that have the same track width?

Mr. Howard [plaintiffs' counsel]: Object. Repetitious and irrelevant.

Court: Sustained on the grounds it's irrelevant.

Q: Are there other vehicles that have about the same center of gravity?

Mr. Howard: Objection. It's irrelevant.

Court: Sustained.

. . . .

Q: If you drive a three-quarter-ton pickup, is it the same as driving a Honda Accord; handling, steering?

Mr. Howard: Objection. It's irrelevant.

Court: Sustained.

. . . .

Q: ... [T]ake another vehicle that has wider track width and lower center of gravity, can it be rolled on a level surface with driver [steering] input?

Mr. Howard: Objection. It's irrelevant. . . .

Court: Sustained.

Defendants contend that not allowing them to cross-examine Anderson with regard to characteristics of other vehicles and how they would react under the conditions depicted in plaintiffs' film left unchallenged the assertions that track width and center of gravity are the essential characteristics in determining a vehicle's rollover susceptibility and that Jeeps are more dangerous than "other vehicles" because their track width is narrower and their center of gravity higher. Mr. Anderson had been allowed to compare Jeeps with other vehicles, including the Chevy Chevette, which, contrary to the thesis of the dissenting opinion, is not a utility vehicle. Defendant should have been allowed to probe the comparisons Anderson made.

In testifying for plaintiff, Mr. Noettl, another expert witness, testified: "It was very difficult to turn a passenger car over." On cross-examination, he was asked the basis of this opinion.

Q: What experience have you had in trying to rollover [sic] a passenger vehicle?

Mr. Johnson: Object on the basis of relevancy.

Court: I don't want to get into testing all other kinds of vehicles, because we've got enough problems with the one. So, I'm going to sustain the objection.

Contrary to the statement in the dissenting opinion, it is clear that by inquiring as to his experience, defendants were attempting to probe the expert's credibility and the foundation for his testimony that it is difficult to roll a passenger car.

On recross-examination, Mr. Noettl was also asked:

Q: I think we were talking about what you would expect to happen to the Commando or any other vehicle that's hit under the circumstances you have been describing.

A: Yes.

Q: And do you feel that any vehicle would come out of that situation unscathed, basically?

Plaintiff's objection to this question was also sustained.

■ An assertion or opinion given on direct testimony that bears on a key issue in the case is a proper subject of cross-examination. While the trial court's attempt to avoid confusion of the issues and a long and cumbersome trial is understandable, defendants were entitled to conduct cross-examination into the basis of the opinions offered by plaintiffs' expert witnesses and to probe the comparisons they had made on direct examination.

■ Here, defendants were repeatedly cut off during their attempts to cross-examine plaintiffs' experts. The numerous objections of plaintiffs' counsel, many of which were improperly sustained, prevented defendants from probing the basis of opinions given by plaintiffs' experts on comparisons they had made in their direct examination. As a result, the issues were presented to the jury without the added light that thorough cross-examination sheds. We find, therefore, that the trial court erred in limiting defendants' cross-examination of plaintiffs' expert witnesses. The trial court did not limit those experts to comparisons to utility vehicles on their direct examination. Hence cross-examination should not have been so restricted.

### IV.

Defendants also contend that the trial court erred in excluding certain films and exhibits offered by them as evidence. They called a Mr. Heitzman as an expert witness to testify regarding the handling characteristics of Jeep vehicles. He offered a film showing CJ–5s successfully negotiating emergency maneuvers. Plaintiffs objected on the ground that the intro-duction of the film violated previous orders of the court regarding discovery. The objection was sustained.

■ Plaintiffs had submitted interrogatories seeking any testing Jeep had done regarding the handling characteristics of the 1966–73 Jeep Commando. At a hearing on plaintiffs' motion to compel discovery, Judge Sorenson ordered Jeep to respond to the interrogatory within thirty days. At trial, after hearing arguments in chambers on the admissibility of the film, the court ruled:

I think that in the context of all the circumstances and with respect to discovery procedures ... I think the plaintiffs were entitled to have, or see, the films and test results before trial pursuant to their discovery interrogatories ..., the films are not admissible.

The trial court can exclude evidence that violates discovery orders under rule 37 of the Utah Rules of Civil Procedure. However, defendants point out that the discovery covered only tests of the 1966–73 Jeep Commando. The film offered was of a Jeep CJ–5. The film simply is not covered by the language of the interrogatory. Although plaintiffs' experts were allowed at trial, over objections of defendants, to show films of CJ–5s based on their foundational testimony that its handling was substantially similar to that of the Commando, that ruling does not place the film within the scope of material sought in the pretrial discovery request. The dissenting opinion would have defendants divine the scope of the requests by a trial court ruling on the admissibility of evidence which came much later. This burden cannot fairly be placed on them. The tests were not produced to show the handling of the "66–73 Jeep Commando," nor were they offered for that purpose. Defendants maintained that the handling of the CJ–5 and the Commando was not the same. The tests were offered to rebut evidence presented by plaintiffs that the CJ–5 was defective because of its handling characteristics. Although this evidence could have been excluded on the basis of relevancy had the trial court earlier excluded plaintiffs' films, once the court

allowed plaintiffs to try their case on the basis of comparison with the CJ–5, it could not then refuse defendants the opportunity to rebut assertions made by plaintiffs in the presentation of their case. The trial court erred in excluding the film on the basis that defendants had failed to comply with orders regarding discovery.

Defendants offered a second film in conjunction with Heitzman's testimony. This film showed non-Jeep vehicles doing mechanically induced rollovers similar to those shown in plaintiffs' film. After excluding defendants' first film for failure to produce it in discovery, the trial court ruled that this second film was not admissible, stating:

> Now, the other one rests on a different principle, I think. And the question that I have there is, the relevancy of it and whatever else you might want to raise.

The evidence was offered to rebut the tests shown on plaintiffs' films and to demonstrate that there was no design defect in the Commando because virtually any vehicle would roll when subjected to such tests.

We have no quarrel with the rule of law relied upon in the dissenting opinion that "evidence of the condition of other products is irrelevant and not admissible to establish a defect in a particular product." This is a sound rule when properly applied as it was in the cases cited in the dissenting opinion. For example, in *Clark v. Detroit & Mackinac Ry.*, 197 Mich. 489, 163 N.W. 964 (1917), a rowboat rented from the defendant capsized, causing four minors to drown. The Michigan court held that it was error to attempt to prove the unseaworthiness of the capsized boat by admitting evidence of the various conditions of repair of the other boats kept for hire by the defendant.

Similarly, in *Detroit, T. & I. R.R. v. Banning*, 173 F.2d 752 (6th Cir.), *cert. denied*, 338 U.S. 815, 70 S.Ct. 54, 57, 94 L.Ed. 493 (1949), also cited in the dissenting opinion, the plaintiff, a railroad brakeman, was injured while making a flying switch. He brought suit against his employer railroad, contending that the boxcar in which he was riding and which he was required to slow down by applying a hand brake had been pushed too fast by the engine, making it impossible for him to adequately slow down the boxcar, which was to couple with a standing car. At trial, the plaintiff was allowed to testify that although he had previously made twenty-five to thirty flying switches, none of them were made at a rate of speed as high as the one in which he was injured. On appeal, the Sixth Circuit Court of Appeals held that it was error to have admitted the plaintiff's testimony. Said the court:

> No foundation was laid to show the circumstances, distance, grade or other conditions of such previous operations. We believe the testimony was improperly admitted. Several factors can affect the speed at the time of impact, variable under different operations, irrespective of the initial speed given to the free rolling cars. It is a well-established rule of evidence that circumstances under which other comparable conduct occurs should be substantially similar. Wigmore on Evidence, 3d ed., vol. II, §§ 459, 460 [and citing other cases].

*Banning*, 173 F.2d at 756.

■ In the instant case, plaintiffs introduced films of Jeep CJ–5s rolling. In part I of this opinion, we upheld the admissibility of those films because of the substantial similarity of the vehicle shown in the films to the vehicle in which plaintiffs were injured. However, plaintiffs in presenting their case did not stop there. They produced several experts who repeatedly in their testimony drew comparisons of the rollover tendencies of Jeep vehicles to non-Jeep vehicles. Plaintiffs' aim was to show that the Jeep in which they were riding was of an unsafe design and had a tendency to roll much easier than other vehicles. For example, plaintiffs' expert, Mr. Shaw, testified: "There is no doubt that this vehicle is much more prone to roll over than some others." Likewise, plaintiffs' expert, Mr. Noettl, testified that "it was very difficult to turn a passenger car over." Finally, Mr. Anderson, another of plaintiffs' experts, testified that Jeep vehicles have "a delay in

the handling response" that is greater than S10 Blazers and Chevy Chevettes. Under the rule of law relied upon by the dissenting opinion, that evidence of the condition of other products is not admissible to establish a defect in a particular product, it may be questioned whether such comparisons should have been admitted because of the lack of similarity. However, right or wrong, plaintiffs' experts were allowed to draw the comparisons between the rollover propensities of Jeep and non-Jeep vehicles. Certainly then, defendants should have been allowed in rebuttal to prove the experience of plaintiffs' experts and to introduce into evidence the film showing non-Jeep vehicles doing mechanically induced rollovers similar to those shown in plaintiffs' film. This situation is wholly different from the situations in the two above cases relied upon in the dissenting opinion where the plaintiff was not allowed to make comparisons when the circumstances were dissimilar.

■■■■ The third film that defendants claim was wrongfully excluded was offered as exhibit No. 174, a video produced by defendants' expert, Dr. Warner. It consisted of two parts: the first showed a 1972 Jeep Commando conducting a drive-through of the accident scene, and the second showed the same vehicle with outriggers attached doing maneuvers in a parking lot. The trial court ruled that the first part of the film was not probative of any issue. We agree. The second part was excluded because the test was not made until after the trial had commenced, in violation of pretrial orders regarding discovery. Counsel for defendants stated that No. 174 was offered to show the handling characteristics of the 1972 Commando. Clearly, it came within the scope of plaintiffs' interrogatories and was properly excluded for failure to respond to discovery.

In conjunction with exhibit No. 174, the trial court viewed a film of a 1970 Ford in a rollover test (exhibit No. 175). Defendants offered No. 175 to demonstrate the movement of vehicle occupants during a rollover. The trial court determined that the film was not probative and excluded it.

The film was dissimilar to the accident, was not necessary to rebut any evidence offered by plaintiffs, and was not probative of any disputed issue. There was therefore no error in the exclusion of defendants' exhibit No. 175.

■■■■ Defendants also offered exhibit No. 164, a series of five photographs showing live models posed in a static vehicle to represent passenger movement in a rollover. This was offered to illustrate the testimony of Dr. Warner that the movement of the passengers, not the design of the vehicle, caused the injuries. The trial court initially admitted and then excluded the exhibit, stating:

> The probative value is limited at least because of the photographs not being representative of just what did happen to the vehicles ... or the people in them.

While it is not clear whether the basis of the trial court's ruling was relevance, Utah R.Evid. 401, or that the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, etc., Utah R.Evid. 403, we will uphold the trial court's ruling where there is any valid basis to do so. *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986). Here, the trial court could have properly excluded the evidence under either theory; therefore, we find no error in the exclusion of exhibit No. 164.

## V.

■■■■ Defendants also contend that the trial court erred in excluding all references to the availability of seatbelts and plaintiffs' failure to use them. Plaintiffs made a motion in limine to exclude all evidence of seatbelts. The trial court excluded such evidence, stating:

> [T]o speculate what the seatbelt might have done in this type of situation is just something that the jury ought not to, and they will not have, under my ruling, the obligation to consider.... I want no more evidence in this case with regard to seatbelts.

Defendants contend that the evidence of seatbelts was relevant and necessary to show (1) that their presence was a factor the jury should consider when determining

if the vehicle was unsafe as designed, and (2) that plaintiffs' injuries could have been prevented or lessened by the use of seatbelts and therefore the jury should be allowed to determine whether plaintiffs' duty of ordinary care or their duty to mitigate damages required them to wear seatbelts.

We agree that evidence of how the presence of seatbelts affected the design safety of the vehicle should be admitted. However, the bulk of defendants' proffered evidence and the main thrust of their argument regarding seatbelts was directed at plaintiffs' failure to use them as constituting contributory negligence or failure to mitigate damages. The majority of the cases cited in the briefs submitted to this Court have rejected this approach. *See Kopischke v. First Continental Corp.*, 187 Mont. 471, 610 P.2d 668 (1980) (for citations to other jurisdictions which have rejected this approach). More persuasively, the legislature has passed Utah Code Ann. § 41–6–186 (1988), which provides:

> The failure to wear a seat belt does not constitute contributory or comparative negligence and may not be introduced as evidence in any civil litigation on the issue of injuries or on the issue of mitigation of damages.

Although this statute was passed subsequent to the litigation *sub judice* and was therefore not controlling at trial, we nonetheless decline to place ourselves in the awkward position of adopting a stance that is in direct contravention of express legislation. We therefore find that the trial court did not err in excluding evidence that the failure to use seatbelts constituted contributory negligence or failure to mitigate damages.

### VI.

■ Rule 103 of the Utah Rules of Evidence states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. In the instant case, the trial court erroneously excluded evidence offered by defendants. That evidence was necessary to rebut the assertions that plaintiffs made to establish liability. This error was compounded by unduly restricting the scope of defendants' cross-examination. Given the conflicting testimony presented on this key issue, we cannot say that the substantial rights of defendants were not affected by the combined effects of the erroneous exclusion of the evidence and the limitation of cross-examination. While no one error by itself perhaps mandates reversal, the cumulative effect of the several errors undermines our confidence that defendants were able to present to the jury their theory of the case and that a fair trial was had.

We therefore reverse and remand for a new trial.

WE CONCUR:

HALL, C.J., and ZIMMERMAN, J., concur.

STEWART, Justice (dissenting).

After a two- and one-half-week trial which produced some 5,000 pages of transcript, a verdict was returned for plaintiff Stephen Whitehead for damages produced by the tragic and permanent injuries suffered in the rollover of a Jeep Commando. The Court reverses the jury verdict and judgment on the basis of a few evidentiary rulings culled from a host of such rulings. The Court holds that the trial court erred in (1) limiting defendants' cross-examination, and (2) excluding defendants' films. I submit that the trial court was clearly correct and that, in any event, the rulings fall within a trial judge's discretion. For these reasons, I dissent.

### I. LIMITATIONS OF DEFENDANTS' CROSS–EXAMINATION

The majority holds that the trial court improperly limited defendants' cross-examination of plaintiffs' experts. The majority cites three instances in which the trial court "cut off" defendants' attempts to cross-examine plaintiffs' experts and which prevented defendants from probing the basis of opinions given by plaintiffs' experts.

This Court has long held that the trial court has considerable discretion in determining whether evidence is relevant.

*Bambrough v. Bethers*, 552 P.2d 1286 (Utah 1976). The judgment of the trial court in admitting or excluding evidence should not be reversed absent an abuse of discretion, and only when the error is prejudicial. *State v. Miller*, 727 P.2d 203 (Utah 1985); *State v. McClain*, 706 P.2d 603 (Utah 1985); *Terry v. Zion's Coop. Mercantile Inst.*, 605 P.2d 314 (Utah 1979). Generally, evidence of the condition of other products is irrelevant and not admissible to establish a defect in a particular product. *See Detroit, T. & I. R.R. v. Banning*, 173 F.2d 752, 756 (6th Cir.), *cert. denied*, 338 U.S. 815, 70 S.Ct. 54, 57, 94 L.Ed. 493 (1949); *Clark v. Detroit & M. Ry.*, 197 Mich. 489, 503, 163 N.W. 964, 968 (1917); 29 Am.Jur.2d *Evidence* § 302, at 348 (1967); 32 C.J.S. *Evidence* § 583, at 712 (1964). Thus, it is irrelevant whether the Jeep Commando was unreasonably dangerous compared with other makes or models of automobiles generally. The only relevant inquiry is the turnover characteristics of the Jeep Commando and other vehicles substantially similar to it.[1]

In this case, the trial judge did not abuse his discretion by ruling that the scope of cross-examination would include only comparisons of vehicles with the same or similar characteristics as the Jeep Commando. The court, during the course of the trial, reminded defendants' counsel that only evidence of similar vehicles would be admitted:

The Court: I don't think I've prohibited any kind of cross examination with reference to vehicles that had the same or similar characteristics; to-wit: center of gravity and wheel width, that Jeep has.

Mr. Mandlebaum [attorney for defendant AMC/Jeep]: Well, I may be incorrect. But I believe you have, your Honor. I thought the Court's ruling was that we could not compare other vehicles.

The Court: No. The only ruling that I have made with regard to that, at least that's my intent, was that unless the vehicles were similar, that I wasn't going to permit you to compare them in order to show that other vehicles might be as dangerous as this vehicle.

The majority now holds that the trial court's limitations on cross-examination interfered with defendants' ability to attack the foundation of the opinions of plaintiffs' expert witnesses. Defendant was allowed, however, to introduce such evidence when it was intended to go to credibility, as shown below.

The majority cites three examples of the trial court's limitations of AMC/Jeep's cross-examination. The examples cited do not prove that there was a limitation of cross-examination as to any "critical aspect of plaintiffs' proof." In light of the trial court's ruling that only evidence of vehicles with the same or substantially similar characteristics would be admissible, evidence of other non-similar types of vehicles was inadmissible absent some special relevancy.

Every ruling criticized by the majority was in fact required by the court's pretrial ruling, yet the majority does not even discuss the validity of that ruling. Indeed, the majority's view of this case would allow defendants to delve into the rollover characteristics of every single type of four-wheeled passenger vehicle on the road. Such a ruling would have made it virtually impossible to try this case. It is, of course, self-evident that all four-wheeled vehicles can be rolled over. Whether a vehicle is defectively designed depends upon whether the vehicle is dangerous when used under the ordinary conditions of its intended use. That should be determined by examining vehicles that are designed for similar purposes, i.e., utility vehicles in this case, as the trial judge ruled. In my view, the majority undermines the trial judge's ability to manage a case such as this by permitting defendants to explore on cross-examination matters of highly attenuated relevancy.

---

1. The majority opinion concedes that only films showing accidents of a similar nature are admissible and that the trial court correctly excluded one of defendants' films on this basis.

However, the majority appears to reject the proposition that the scope of both direct and cross-examination may be properly limited to similar vehicles.

The majority's first example of limitation of cross-examination arises out of plaintiffs' expert's testimony on direct examination concerning the "handling characteristics of Blazers, Chevy Chevettes, and CJ–7s." On direct examination, the expert stated:

Q: And what type of handling and maneuvering tests did you perform last week?

A: Well, I had some instrument tests that I performed on four different vehicles. I had a CJ–5, a CJ–7, a small Blazer, the new F10 [sic] size Blazer, and the Chevy Chevette.

Q: And what did the results show in regard to your tests on the Jeep itself?

A: Well, all the results are preliminary. I don't have all the data reduced yet. But my preliminary quick look at that data indicates that the Jeep vehicles both overturn at speeds of 20 to 25 miles an hour, and they both have a delay in the handling response that's in the magnitude of a half a second before the vehicle is stabilized to turn. The other vehicles I tested, the S10 Blazer and the Chevy Chevette, they did not have delays of that magnitude. They were much less.

The majority cites the following, which occurred in the context of the above testimony, as a limitation of cross-examination:

Q: Are there other vehicles that have the same track width—

Mr. Howard [plaintiffs' counsel]: Object. Repetitious and irrelevant.

Court: Sustained on the grounds it's irrelevant.

Q: Are there other vehicles that have about the same center of gravity?

Mr. Howard: Objection. It's irrelevant.

Court: Sustained.

. . . .

Q: If you drive a three-quarter-ton pick-up, is it the same as driving a Honda Accord; handling, steering?

Mr. Howard: Objection. It's irrelevant.

Court: Sustained.

. . . .

Q: [T]ake another vehicle that has wider track width and lower [center of gravi-ty], can it be rolled on a level surface with driver [steering] input?

Mr. Howard: Objection. It's irrelevant.

Court: Sustained.

Defendants' attempted cross-examination of plaintiffs' expert went far beyond the scope of the trial judge's order limiting the evidence and also beyond the scope of direct examination. There was no testimony on direct concerning the rollover propensities, track width, or center of gravity of "other vehicles" in general. The only testimony given on direct examination related to the "handling response" time of the CJ–5, CJ–7, S10 Blazer, and Chevy Chevette, all of which are utility vehicles having general characteristics substantially similar to the Jeep Commando. I submit that the trial court did not err in limiting cross-examination.

The second example cited by the majority of improper limitation of cross-examination occurred in the following exchange on defendants' cross-examination of plaintiffs' expert:

Q: What experience have you had in trying to roll over a passenger vehicle?

Mr. Johnson [plaintiffs' counsel]: Object on the basis of relevancy.

Court: I don't want to get into testing all other kinds of vehicles, because we've got enough problems with the one. So, I'm going to sustain the objection.

The cross-examination question above was based on an assumption made by plaintiffs' expert and found in the following direct examination:

Q: When you started out with this particular test, did you know exactly what speeds and what input it would take to turn the CJ–5 over?

A: No, absolutely. It was just the opposite. That the belief was, that since it was very difficult to turn a passenger car over, especially on a flat surface at low speeds, that it would be difficult to do this with a Jeep, too.

As is evident from the above, plaintiffs' expert did not purport to have experience in testing or researching the rollover propensities of "passenger cars," nor did he

claim to have experience in rolling vehicles other than the CJ–5. He clearly stated that he started with the belief that since it was difficult to roll a passenger car, it would also be difficult to roll a CJ–5. The testimony on direct examination only made passing reference to "passenger cars." The focus of the examination clearly was not on the rollover propensity of passenger cars, and the trial judge was clearly within the ambit of reasonable discretion in sustaining the objection on cross-examination.

Nevertheless, after sustaining the objection as to "passenger cars," the court allowed defendant AMC to cross-examine about "utility vehicles" because of their substantial similarity to the CJ–5 and the Jeep Commando:

> Mr. Jensen [attorney for defendants]: What about the vehicles similar to the CJ–5; that is utility vehicles? The Scout, Landcruiser, and that class of vehicles? The small pickups, narrow and with equivalent center of gravity?
>
> Mr. Johnson [plaintiffs' counsel]: Object on the basis of relevance and foundation. Outside the scope of direct.
>
> The Court: What is the relevance?
>
> Mr. Jensen: Similar vehicles, Your Honor.
>
> The Court: The same width, the same—
>
> Mr. Jensen: Similar track width and center of gravity.
>
> The Court: You may answer.

Thus, there was no limitation on cross-examination about substantially similar vehicles.

The majority's third example of an improper limitation of cross-examination, if read in context, reveals that the judge sustained an objection that went only to the form of the question. Since a question that is barred because of its form may always be rephrased, and since defendants' question was not rephrased, it simply is not true that the trial court limited cross-examination in this instance. In the following testimony, the focus of cross-examination was on a direct, straight-on rear-end collision to a vehicle without any lateral forces:

> Q: So would you expect that vehicle to stay on the road?
>
> A: Again, under a hypothetical thing where you just have an impact from the rear, no lateral forces are put in, yes, it will stay right on the road.
>
> Q: No problem at all staying on the road?
>
> A: No problem at all.
>
> Q: The driver just rides it out and no problem?
>
> A: Under those conditions I described, yes. If you have no lateral forces acting on the vehicle, [no] side forces, the vehicle isn't going to turn over.
>
> Q: All right. That would apply whether it's a Commando or some other vehicle?
>
> A: In my opinion, that's correct.
>
> Q: All right. And what distance would it take for a driver to get that vehicle under control, and could he do it within the width of three lanes of the freeway?
>
> Mr. Johnson: Outside the scope, Your Honor. We object to it. Secondly, the facts of this case are clearly lateral force. The evidence at this point is uncontroverted that six inches, the Oldsmobile hit six inches of the Jeep on a specific corner. We don't have a direct back input.
>
> The Court: I'm going to take an afternoon recess at this time. I'll overrule your objection with respect to it not being within the scope of the direct examination. But I will sustain it with regard to the form of the question. And when we come back you may go from there.
>
> . . . .
>
> Q [By Mr. Jensen]: Thank you, Your Honor.
>
> I think we were talking about what you would expect to happen to the Commando or any vehicle that's hit under the circumstances that you have been describing?
>
> A: Yes.
>
> Q: And do you feel like any vehicle would come out of that situation unscathed, basically?

Mr. Johnson: Your Honor, the Court sustained the objection as to the form of the question.

The Court: And I'll sustain the objection to that question.

Besides asking about the effect of a direct rear impact without lateral forces, the question was ambiguous and too broad and, at the least, should have been restated. The trial court acted well within its discretion, and in any event, the incident is unimportant to the outcome of the trial.

In fact, full cross-examination of plaintiffs' experts' qualifications and experience was allowed.[2] For example, Mr. Jensen, counsel for AMC/Jeep, cross-examined Mr. Noettl, plaintiffs' expert, on his knowledge of vehicle rollover literature. Mr. Noettl identified various tests, reports, and studies concerning vehicle rollover thresholds and vehicle characteristics. Overruling plaintiffs' objection to the question concerning the rollover propensity of big trucks, the court stated:

Overruled. It may or may not be. I have not changed my ruling with respect to other matters, in permitting him to go into this. This may have something to do with credibility, veracity, accuracy, or whatever.

The cross-examination of Mr. Anderson, another of plaintiffs' experts, also demonstrates that defendants were not prevented from questioning an expert about his experience and qualifications.

This Court has ruled that counsel should make clear to the trial judge the relevance of cross-examination questions when an objection is sustained on relevancy grounds.

*State v. Miller,* 727 P.2d 203, 205 (Utah 1986). *See also State v. Barella,* 714 P.2d 287, 288 (Utah 1986). In none of the present instances where the majority rules that the trial court improperly sustained plaintiffs' objections to questions regarding other vehicles did defense counsel state the relevance of those questions. Absent an explanation of the relevance of the line of inquiry, exclusion was properly called for under the pretrial ruling, which certainly was within the discretion of the court. If, indeed, the point was to attack the foundation of the expert's opinion—and not to confuse the substantive issue of determining whether the Commando was defective—that should have been explained to the trial court. Otherwise, the trial court was certainly entitled to assume that defendants sought to circumvent the judge's ruling on relevancy.

## II. EXCLUSION OF FILMS

The trial court's decision to exclude defendants' test films was also clearly within its discretion. One film portrayed non-Jeep vehicles performing mechanically induced rollovers in a manner somewhat similar to those shown in plaintiffs' film. The court ruled:

[I]t's irrelevant, and it's irrelevant because they involve other vehicles which the jury would have to take into consideration as to how it was done, the comparisons, the whole works.

. . . .

And the other witnesses have seen the Jeep film. And I've let him testify with

---

**2.** On a related point, the majority accepts AMC's contention that

not allowing them to cross-examine Anderson with regard to characteristics of other vehicles and how they would react under the conditions depicted in plaintiffs' film left unchallenged the assertions that track width and center of gravity were the essential characteristics in determining a vehicle's rollover susceptibility and that Jeeps were more dangerous than other vehicles because their track width was narrower and their center of gravity higher.

That is not correct. Defendants elicited such evidence from its own expert witness, Edward Heitzman. Heitzman testified at length concerning the factors that determine the susceptibility to rollover of vehicles in general. Heitzman testified about numerous other vehicles (including both utility vehicles and passenger cars) which have a center of gravity equal to or higher than the Jeep Commando. Heitzman also testified extensively about the static stability ratio, which was relied on by plaintiffs' experts, to determine a vehicle's propensity to roll over. In fact, Heitzman had a list of vehicles with their static stability ratios which formed the basis for his testimony regarding the comparison of the Jeep with other vehicles. After extensive discussion, the list itself was admitted into evidence.

regard to his version of those tests with regard to the Jeep. I kept out the other because I thought they were irrelevant on the issue as to whether or not the Jeep was defectively designed, and I still think it is.

. . . .

Because each of those tests are—they have a—they're not all exactly the same. You don't even have the same vehicle. And we'd have to determine the reliability of the tests for each individual car or automobile. And I'm not going to let the jury do that.

Defendants argued before the trial court that plaintiffs had at least three different tests or films in evidence showing different vehicles making different maneuvers, all of which involved different steering inputs at different speeds. The judge responded that those tests and films were admitted because expert testimony established that the vehicles depicted in the films were substantially the same as the Jeep Commando involved in this case:

The Court: That's the only reason. The rest of them were out. And I'm going to keep them all out.

The majority holds that because plaintiffs' experts were allowed to draw the comparisons between the rollover propensities of Jeep and non-Jeep vehicles, defendants should also have been allowed to introduce a film of non-Jeep vehicles doing mechanically induced rollovers. As stated earlier, evidence of the condition of other products is generally inadmissible to prove a defect in a particular product. *See Banning*, 173 F.2d at 756; *Clark*, 197 Mich. at 503, 163 N.W. at 968; 29 Am.Jur. *Evidence* § 302; 32 C.J.S. *Evidence* § 583. Such evidence is admissible, however, when the products are substantially similar. There is no evidence that defendants' film showed vehicles which were substantially similar. Plaintiffs' film, however, was of vehicles substantially similar to the Jeep Commando.

In addition, the majority rules that the trial court erred in excluding defendants'

film of a Jeep CJ–5 on the basis that it violated a discovery order directing defendants to answer an interrogatory that would have disclosed the existence of the film. The majority states: "[D]efendants point out that the discovery covered only tests of the 1966–73 Jeep Commando. The film offered was of a Jeep CJ–5. The film simply is not covered by the language of the interrogatory." I submit the majority is simply in error in stating that the interrogatory did not cover the film. The interrogatory directed defendants to "state whether Jeep Corporation or Kaiser Jeep Corporation tested for or otherwise determined the handling characteristics and qualities of said automobiles [Commandos] both during the development and subsequently to the initial production...."

The interrogatory specifically requested information as to all tests, even those subsequent to production, to determine the handling characteristics and qualities of the Commando. Defendants' tests of the Jeep CJ–5 were, in fact, used to determine the handling characteristics and qualities of the Jeep Commando, contrary to the assertion of the majority that the films were not offered for the purpose of showing the handling of the '66–73 Commando. The CJ–5 was shown by foundational testimony to be substantially similar to the Jeep Commando. A vehicle is substantially similar only if it has substantially the same characteristics and qualities. The interrogatory requested information concerning not only the subsequent testing of Commandos, but also the testing for, or otherwise determining, the *characteristics* or *qualities* of the Commando. Such testing included the CJ–5 because it had many of the same characteristics and qualities of a Commando. Otherwise, the CJ–5 film would have been irrelevant to defendants' case and inadmissible.[3]

The majority claims, however, that defendants were forced to "divine the scope of the requests by a trial court ruling on the admissibility of evidence which came much later." Defendants were instructed, weeks before trial, that they could cross-examine

---

**3.** Defendants claim now on appeal that "[i]t was a film made in *1983* of a *Jeep CJ–5* and had nothing to do with the 1972 Commando." (Emphasis in original.) If that is true, we should affirm the trial court's order on grounds of irrelevancy.

but were "not to bring up new facts which were not given plaintiffs' counsel in their response to interrogatories." Given the purpose of submitting the CJ–5 film—to show the characteristics of the Commando—defendants had prior notice and should not be able to influence the outcome of this long and difficult case by surprise. The tests of the CJ–5 clearly fell within the scope of the interrogatory in question. The trial court properly excluded the test film on the ground that defendants failed to comply with discovery orders based on that interrogatory. *See Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1284–85 (Wyo.1983) (exclusion of defendants' rollover film for violation of discovery order was within broad discretion of trial court).

Finally, the majority opinion states that it was improper for the trial court to exclude exhibit No. 130, a storyboard illustrating defendants' expert's testimony "that the vehicle in question had been involved in a prior accident that compromised the structural integrity of the roof." This question goes more to damages than liability. Its admissibility turned on a whole host of variables. Determination of admissibility is in the trial judge's discretion.

DURHAM, J., concurs.

## ON REHEARING

HOWE, Associate Chief Justice:

We granted plaintiffs' petition for rehearing to reexamine our written decision originally dated February 2, 1989. The parties have filed briefs on rehearing, and further oral argument has been had. After a complete reexamination of the errors raised on appeal, we affirm our decision of February 2, 1989, except that we amend the filing date and delete from the opinion the paragraph holding that it was error to refuse to admit exhibit 130.

HALL, C.J., and ZIMMERMAN and DURHAM, JJ., concur.

STEWART, J., dissents.